## Foltz Appeal.

Argued April 21, 1952. Before DREW, C. J., STERN, STEARNE, JONES, BELL, CHIDSEY and MUSMANNO, JJ.

*William T. Dom,* with him *Kunkle & Trescher,* for appellants.

*James Gregg,* with him *Portser, Gregg & McConnell,* for appellees.

OPINION BY MR. JUSTICE MUSMANNO, May 26, 1952:

On October 10, 1950, a complaint and petition, under the authority of Sec. 503 of The Second Class Township Law (1947 P. L. 1481, as amended; 53 P.S. 19093-503) was filed in the Court of Quarter Sessions of Westmoreland County, asking for a rule to show cause why the offices of William W. Shoaf, Joseph P. Sittman and William H. Fennel as Supervisors of Sewickley Township, should not be declared vacant, and another appointed in the stead of each of them.

The Complaint was signed by 682 citizens of Sewickley Township, being more than 5% of the registered electors of the township, the minimum number required for such petition by the Township Code referred to. The Complaint enumerated 40 reasons why the supervisors should be removed from office. Judge RICHARD D. LAIRD allowed the rule, heard testimony on the complaint, and on October 8, 1951, made the rule absolute.

Exceptions to the Judge's order were filed the next day and argument was later heard on the matter before a Court en banc made up of Judges LAIRD, MCWHERTER, BAUER and O'CONNELL, who reversed the previous order, and discharged the rule of the complainants.

From that order of the Court en banc an appeal has been taken to this Court.

A review of the entire record confirms the correctness of the action of the lower Court in discharging the rule entered October 8, 1951, and in dismissing the complaint.

The lower court considered seriatim the 40 paragraphs in the Complaint and pointed out why not one by itself, or in combination with any other or others, constituted cause to oust the supervisors from office. We quote with approval the following statement from the opinion written by Judge O'CONNELL, speaking for the Court en banc:

"We are of the opinion that none of the charges made against the Sewickley Township Supervisors have been proved by clear, concise and indubitable proof. The testimony is to the effect that separate contracts were made and that all of these contracts were under $500.00, that records were kept, that there was ample authority in the Acts of Assembly for the salaries, and fees received by the Supervisors, that the monies borrowed and repaid were within the law, that the monies paid for various items were in the general fund, and that the budget requirements were met by a transfer of funds from unencumbered balances. Inferences may be drawn from some of this testimony, but Supervisors should not be removed on mere inferences. The testimony which would warrant the Court in removing Supervisors should be clear and concise. There is no proof that the township suffered any loss by virtue of the acts of these Supervisors. The complaint charges

that the Supervisors wilfully, wrongfully and unlawfully did certain things, and the fact that an information was lodged against these Supervisors by the same people would indicate that at least in the minds of the complainants these acts were criminal in nature. There is no evidence of nonfeasance on the part of these Supervisors nor any wilful violation of any mandatory provision of the Township Code."

As indicated in the above quoted portion of the lower Court's opinion, criminal informations were brought against the supervisors on the same charges enumerated in the Complaint and they were all ignored by the Grand Jury.

The respondents were, in effect, found without fault in these matters in still another proceedings, namely, the report of the auditors of supervisors', tax collector's and township treasurer's accounts for the years 1948 and 1949. At the hearing before Judge LAIRD, counsel for the complainants stipulated that the auditors' reports were filed and no appeal taken therefrom.

Section 503 of The Second Class Township Law, supra, provides, inter alia: "If any township officer *refuses or neglects to perform his duties,* the court of quarter sessions, upon complaint in writing by five percentum of the registered electors of the township, may issue a rule upon such officer to show cause why his office should not be declared vacant and another appointed in his stead. Such rule shall be made returnable not less than two weeks from its date of issue. Upon hearing, and proof that the facts alleged in the complaint are true, the court may declare the office vacant and appoint another in his stead, to hold office during the term of the officer deposed, or to make such other order as to the court may seem just and proper." (53 P.S. 19093-503.) (Italics supplied)

The Court of Quarter Sessions of Westmoreland County has found that the respondents did not refuse or neglect to perform their duties, and we discover no abuse of discretion in the Court's conclusions.

When the people of any municipality, in a duly constituted election, select certain individuals to conduct their local government, those representatives of the people may be removed from office only upon showing of a perverseness which amounts to criminality or culpable indifference to their official duties. This Court, speaking through Mr. Justice SIMPSON, aptly said in the case of *Commonwealth ex rel. Vesneski, Appellant, v. Reid et al.*, 265 Pa. 328, 333, 108 A. 829: ".... the people are entitled to the services of the officer during the entire term for which they elected him (Lloyd v. Smith, 176 Pa. 213), unless he be removed in the way prescribed by the Constitution, if the officer is a constitutional officer (Bowman's Case, 225 Pa. 364), or by the legislature or under its authority in the manner provided by Constitution or statute, if the officer is not a constitutional officer." There are certain mandatory functions required of township supervisors, the failure to perform which will subject them to removal. (*Crane's Appeal et al.*, 344 Pa. 624, 26 A. 2d 457.) This does not mean, however, that they should be threatened with dismissal for honest errors in judgment or for mistakes in administration not occasioned by cupidity or sloth. People demand of their representatives government which is efficient and in meticulous keeping with the highest standards of devotion to their interests. But they are not prepared to dismiss their public officials simply because they do not achieve perfection in every minute detail of bureaucratic operation. It is quite obvious that the officeholder who must perform his duties with the sword of Damocles constantly hanging over his head

can be of little use to the citizens who have the right to expect of him the demonstration of initiative and energy in advancing their welfare within the orbit of their prescribed duties and trust.

The order of the lower court is affirmed and the Appeal is dismissed.