379 A.2d 874

**In the Matter of the FRANKLIN TOWNSHIP BOARD OF SUPERVISORS (two cases).**

**Appeal of Allen B. McNEELY. No. 104 March Term, 1977.**

**Appeal of Charles S. WOOD and Norma W. Schultz. No. 107 March Term, 1977.**

Supreme Court of Pennsylvania.

Argued March 7, 1977.

Decided Oct. 28, 1977.

Rehearing Denied Nov. 30, 1977.

66

68

John W. McIlvaine, Uniontown, for appellant at No. 104.

Thomas J. Terputac, Washington (for Charles S. Wood), Sherman H. Siegel, Washington (for Norma W. Shultz), for appellants at No. 107.

Thomas J. Terputac, Sherman H. Siegel, Washington, William R. Davis, Waynesburg, for appellee at No. 104.

John W. McIlvaine, Uniontown, William R. Davis, Waynesburg, for appellee at No. 107.

Robert P. Kane, Atty. Gen., J. Justin Blewitt, Jr., Deputy Atty. Gen., Chief, Civ. Litigation, G. Alan Kramer, Deputy Atty. Gen., Harrisburg, for intervenor (Com. of Pa.).

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

This is an appeal from an order of the Court of Common Pleas of Greene County removing from office the three supervisors of Franklin Township.[1]

On March 19, 1976, Allen B. McNeely, one of the three supervisors, filed a complaint pursuant to section 503 of the Second Class Township Code [2] for the removal of the other two supervisors, Charles Wood and Norma Shultz. The complaint, signed by 271 electors,[3] alleged that Wood and Shultz had failed to perform their official duties, and had

1.  We hear this appeal pursuant to the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 202(2), 17 P.S. § 211.202(2) (Supp.1977).

2.  Act of May 1, 1933, P.L. 103, § 503, as amended, 53 P.S. § 65503 (1957). This section provides:
    "If any township officer refuses or neglects to perform his duties, the court of quarter sessions, upon complaint in writing by five percentum of the registered electors of the township, may issue a rule upon such officer to show cause why his office should not be declared vacant and another appointed in his stead. Such rule shall be made returnable not less than two weeks from its date of issue. Upon hearing, and proof that the facts alleged in the complaint are true, the court may declare the office vacant and appoint another in his stead, to hold office during the term of the officer deposed, or to make such other order as to the court may seem just and proper."

3.  The complaint was signed by 282 individuals, eleven of whom were later shown not to be registered voters of Franklin Township. The Township had 2010 registered voters. Therefore the signatures of 101 electors would satisfy the requirement of section 503 that a complaint for the removal of township supervisors be signed by 5% of the registered voters.

violated the Second Class Township Code, in several respects.[4] The court issued a rule upon Wood and Shultz to show cause why their offices should not be declared vacant.

Wood and Shultz then began contacting the electors who had signed the complaint. By April 12, 1976, the hearing date on the rule to show cause, Wood and Shultz had contacted 109 of those persons who had signed the complaint, and had obtained the signatures of 100 of those persons on a counter petition to have their names withdrawn from the original complaint. At the April 12 hearing Wood and Shultz filed preliminary objections to the complaint. Also at that hearing McNeely alleged that Wood and Shultz had been threatening and harassing the electors who had signed the complaint for their removal. On the basis of McNeely's allegations, the court issued a decree "enjoining either of the parties in contacting any other signatores [sic] on the original petition filed for their removal except by leave of the Court . . . ."

**4.** The complaint alleged, inter alia:

"5. Over the objections of the third Supervisor, Allen McNeely, the said Charles Wood and Norma Shultz refused to comply with Section 802 of the Second Class Township Code during 1975 by not properly reporting bids of items in excess of One Thousand Five Hundred Dollars ($1,500.00).

6. The Secretary, Norma Shultz, has failed to keep proper minutes of Township Supervisors regular meetings.

7. The Treasurer, Norma Shultz, has failed to keep and report a treasurer's report at the regular meetings, and Charles Woods [sic] has approved this practice.

8. The Treasurer, Norma Shultz, in direct violation of Section 533 of the Second Class Township Code has illegally withdrawn Fifty Thousand Dollars ($50,000.00) from the Machinery Fund, Fire Hydrant Fund, West Franklin Sewer District Fund and Bonar Addition Sewer District Fund, to repay a Fifty Thousand Dollar ($50,000.00) tax anticipation loan.

9. The Treasurer, Norma Shultz, again in direct violation of Section 533 of the Second Class Township Code has illegally withdrawn Twenty-Three Thousand Dollars ($23,000.00) from the aforesaid Funds to pay for the payroll of said township. This particular withdrawal was repaid by the General Fund.

10. Charles Woods [sic] and Norma Shultz, in direct violation of the Second Class Township Code, failed to create a Sinking Fund in order to pay off the tax and [sic] anticipation loan of Fifty Thousand Dollars ($50,000.00), which was borrowed in March of 1975."

On April 19, 1976, Wood and Shultz filed a motion to vacate the injunction. A hearing on this motion was set for April 21, to be heard at the time of the hearing on their preliminary objections to the complaint.

At the April 21, 1976 hearing, seven of the witnesses called by Wood and Shultz asked the court to allow them to withdraw their names from the complaint for the removal of Wood and Shultz.[5] One of the witnesses testified that he did not understand it was for the removal of Wood and Shultz. The other witnesses indicated that they wanted their names withdrawn because they thought the complaint was for the removal of all three supervisors, or that, although they understood that the complaint was for the removal of Wood and Shultz, they now believed that remov-

---

5. In *Mercersburg Independent School District*, 237 Pa. 368, 372, 85 A. 467, 469 (1912) (dicta), this Court stated:
   "The jurisdiction of a court in a sense attaches as soon as the petition is filed, or presented, but, prior to a hearing, and before anything has been done involving the rights of the parties, reasonable discretion should be exercised in favor of petitioners who in good faith and for proper reasons desire to withdraw."
   The Court stated that Pennsylvania cases established the following general rules:
   "2. A petitioner does not have the right per se to withdraw his name after jurisdiction has attached, and in such cases never has the right to withdraw without leave of court.
   3. If a petitioner has been induced to sign by misrepresentations, he may withdraw his name . . . but this must be done with leave of court . . . .
   4. . . . [I]f, a sufficient number desire to withdraw, the court would not only be warranted in dismissing the petition, but in many cases should do so . . . ."
   Id. 237 Pa. at 371, 85 A. at 468. These dicta were followed in *Lerten Appeal*, 168 Pa.Super. 516, 79 A.2d 670 (1951). In *Lerten Appeal*, the Superior Court further elaborated on the procedure to be followed when individuals desire to withdraw their signatures from a petition or complaint after it has been filed. The Superior Court stated that the signers desiring to withdraw should "appear and give testimony" so that the court can "determine whether they were acting in good faith, and for proper reasons sufficient to warrant their withdrawal." Id. 168 Pa.Super. at 527, 79 A.2d at 676.
   Because there were enough signatures on the complaint filed in this case to bring the removal proceedings even if those who requested leave to withdraw their signatures were allowed to do so, the court did not rule on the sufficiency of the reasons offered.

al proceedings should be held as to all three supervisors.[6] Wood and Shultz offered to testify about statements made to them by other electors who had signed the complaint, and later signed the counter petition, but an objection to this evidence was sustained. After their witnesses testified, Wood and Shultz requested a thirty day continuance during which they would be allowed to contact the rest of the electors who had signed the petition for their removal. At this point, the court stated that it was treating this proceeding as an action for removal of all three supervisors. At the conclusion of the hearing, the court denied Wood's and Shultz' motion for a continuance, denied their motion to vacate the injunction, and overruled their preliminary objections.[7] No appeal was taken from the order denying the motion to vacate the injunction, or from the decree granting the injunction.

A hearing on the merits of the removal complaint was held on May 27 and 28, 1976. McNeely was the principal witness in favor of removal. The report of the certified public accountants who audited Franklin Township for the year ending December 31, 1975 was also admitted into evidence. The evidence presented revealed that many of the financial transactions of the Township, including payment of bills, borrowing money, and the reporting of bids on township purchases, were undertaken without approval at regular meetings of the supervisors, or were not reported in the minutes of those meetings.

The evidence presented also disclosed a series of transactions which involved transfers between special and general

6. While the complaint was being circulated, McNeely promised to resign if Wood and Shultz were removed from office. It was widely known in the community that McNeely made this offer to resign.

7. Also at the April 21 hearing, McNeely filed an amended complaint. The wording of the complaint was identical to the original complaint, as was the wording of the attached affidavit. In an effort to eliminate any uncertainty as to the manner of the signing of the affidavit, however, the affidavit was executed again, before a different notary—the Prothonotary for the county. The court admitted the amended complaint.

funds,[8] and a tax anticipation loan taken without creation of a sinking fund.[9] In January, 1975, $23,000 was transferred from special funds to general funds to meet payroll costs. No resolution was passed by the Board authorizing these transfers. Each of the checks transferring the funds was signed by Shultz, who was secretary and treasurer for the Township, and by either Wood or McNeely. At the January 27 meeting of the Board, the supervisors adopted a resolution to borrow $40,000 for six months. Some time before March 10, 1975,[10] Wood and Shultz decided to borrow $50,-000, instead of the previously authorized $40,000. They obtained a $50,000 tax anticipation loan due at the end of the year. No sinking fund was created when the loan was taken. Part of the loan was used to repay the $23,000 transferred from special funds. When the loan became due, $50,000 was transferred from special funds to repay the loan, again without any resolution authorizing the transfer.

The trial court found that all three supervisors had failed to perform their official duties. In an opinion and order filed November 5, 1976, the court ordered that the offices of all three supervisors be declared vacant.[11] Exceptions were

8. The special funds include the West Franklin Sewer District Fund, the Bonar Addition Sewer District Fund, the Machinery Fund, and the Fire Hydrant Fund. These funds must be kept in separate accounts, and the Second Class Township Code prohibits the application of special funds for any purpose other than that for which they were collected. 53 P.S. § 65533 (1957).

9. A tax anticipation loan is a loan taken in anticipation of receipt of current taxes and current revenues. Local Government Unit Debt Act, Act of July 12, 1972, P.L. 185, § 501, as amended, 53 P.S. § 6780–201 (Supp.1977). A sinking fund is a special fund created to accumulate money to repay the loan. Id. § 6780–2. The creation of a sinking fund is required when a tax anticipation loan is taken. Id. § 6780–205.

10. The minutes for the March 10, 1975 meeting of the Board state: "Mr. Charles S. Wood and Mrs. Norma W. Shultz have signed the necessary papers to borrow $50,000."

11. The court found, inter alia:
"1. They [the three supervisors] failed to keep full and accurate minutes of their meetings and the conduct of official township business in violation of Section 513 [72 P.S. § 65513 (1957)].

filed, and the court issued an opinion and order on January 21, 1977, dismissing the exceptions and making final its November 5 order removing the three supervisors from office. All three supervisors appeal.

## I. Appeal of McNeely

McNeely argues that the trial court erred in asserting jurisdiction over him in the absence of a complaint calling for his removal. We agree.

Section 503 of the Second Class Township Code[12] provides that a township officer may be removed for refusal or neglect to perform official duties "upon complaint in writing by five percentum of the registered electors of the township . . . ." Without such a complaint, the court does not have the power to order the removal of a township official pursuant to section 503.

■ The court concluded that it has a duty "of its own initiative . . . to assess the fault and find the responsibility for . . . violations . . . ." While it is the duty of the court to assess fault once removal proceedings are instituted, the court is not empowered to decide if such proceedings should be instituted.

■ Because no complaint was filed for the removal of McNeely, the trial court's order vacating his office is reversed.

---

2. They failed to keep complete and accurate financial records of all township monies, and to have regular reports made thereof to the Board at its regular meetings in violation of Section 532 [id. § 65532].

3. They transferred funds illegally from special accounts in violation of Section 533 of the Township Code [id. § 65533].

4. They failed to provide a sinking fund upon the borrowing of $50,000.00 to arrange and provide for its repayment, as required by law.

5. They failed to keep a full and complete record of having advertised for bids when required, under the provisions of Section 802 of the Township Code [id. § 65802] and made payment of bills of the township without official board action reflected on the minutes."

12. Id. § 65503.

## II. Appeal of Wood and Shultz

A.  Wood and Shultz contend that the April 12, 1976 injunction, which enjoined them from contacting any more of the electors who had signed the petition for their removal, is invalid.  They claim the injunction was issued in violation of Pa.R.Civ.P. 1531, and that it infringed on their rights to freedom of expression.

We need not reach this issue, however, as Wood and Shultz failed to take a timely appeal from the issuance of the injunction.  The injunction was a special injunction. A special injunction grants relief which is auxiliary to the main relief requested in the complaint.  See *Rosenzweig v. Factor*, 457 Pa. 492, 327 A.2d 36 (1974); 5 Goodrich-Amram, Procedural Rules Service § 1531(a):1 (2d ed. 1977).  Here the injunction, which was to prevent Wood and Shultz from contacting and possibly harassing the electors who signed the complaint, was entirely separate from and collateral to the relief requested in the complaint, removal of Wood and Shultz for failure to perform their duties.  An appeal from the issuance of a special injunction is authorized by statute. Act of February 14, 1866, P.L. 28, § 1, 12 P.S. § 1101 (1953); *Rosenzweig v. Factor*, supra.[13]  Having failed to avail themselves of the right to appeal the injunctive order, Wood and Shultz cannot now attack it collaterally as a basis for invalidating the removal proceedings, which were not concluded until nine months after the injunction was issued.[14]

**13.**  12 P.S. § 1101 has been interpreted to allow appeals from preliminary injunctions. E. g., *Chester School Authority v. Aberthaw Construction Co.*, 460 Pa. 343, 333 A.2d 758 (1975).  It should be clear, however, that failure to take an appeal from a preliminary injunction does not limit the issues a party may raise when a final injunction granting the same or similar relief is decreed.  In such a case, the appellant is not attacking the validity of the preliminary injunction, but is appealing errors in the issuance of the final injunction which may also have been made when the preliminary injunction was issued.

**14.**  The relief granted in the injunction, and the nature of the injury asserted by Wood and Shultz, lead us to conclude that the injunction constituted a "final order," appealable under Pa.R.A.P. 341, at least on April 21, 1976 when the court denied the motion made two days

▬▬▬▬▬▬▬▬▬▬

**B.** Wood and Shultz raise several additional claims which arguably relate to the validity of the removal complaint.

▬▬ Wood and Shultz argue that the court erred in admitting an amended complaint, which was filed at the April 21, 1976 hearing, nine days after preliminary objections were filed.[15] See generally, Pa.R.Civ.P. 1028(c) ("A party may file an amended pleading as of course within ten (10) days after service of a copy of preliminary objections."). They argue that the amended complaint should not have been admitted because it was not recirculated. This argument is without merit. The amended complaint was a verbatim copy of the original complaint. The only change was that a new affidavit, with the same wording as the first affidavit, was executed before a different notary, in an effort to eliminate any possible irregularities in the manner in which the affidavit was executed. We see no basis for requiring the electors to sign the complaint again before a new affidavit may be executed.

▬▬ Wood and Shultz also claim that two of the affiants are not registered voters of Franklin Township. Section 503 of the Second Class Township Code makes no requirement that the affiants be registered voters, however. Therefore, we find no basis for holding the affidavits are invalid.[16]

earlier to set aside the April 12 injunction. See generally *Bell v. Beneficial Consumer Discount Co.*, 465 Pa. 225, 348 A.2d 734 (1975); Pa.R.Civ.P. 1531(f)(1) ("When a . . . special injunction involving freedom of expression is issued . . . the court shall hold a *final hearing* within three (3) days after demand by the defendant. A *final decree* shall be filed . . . within twenty-four (24) hours after the close of the hearing.") (emphasis added). Accordingly, we are not here concerned with a failure to take an appeal from an interlocutory order.

**15.** See note 7, supra.

**16.** Wood and Shultz also assert that none of the affiants appeared before the notary. This claim is not supported by the record. The only affiant called to testify stated that he appeared before the notary both when he signed the affidavit attached to the original complaint and when he signed the affidavit attached to the amended complaint.

■ Wood and Shultz also challenge the form of the affidavit,[17] and claim that the original complaint was invalid because the person who notarized the affidavit had also signed the complaint. These claims were not raised in preliminary objections or in the answer to the amended complaint, and therefore are waived. Pa.R.Civ.P. 1032.

■ Finally, Wood and Shultz argue that the court erred when it sustained an objection to testimony they offered at the hearing on their preliminary objections. Wood and Shultz offered to testify as to what some of the electors who had signed the counter petition claimed they were told at the time they signed the original complaint. The court properly excluded this testimony as hearsay. Wood and Shultz were not present when these electors signed the complaint, and could testify only as to out of court declarations later made by these electors.[18]

■ C. Wood and Shultz next argue that the court did not have grounds to order their removal pursuant to section 503 of the Second Class Township Code. Section 503 provides for the removal of any township officer who "refuses

**17.** Wood and Shultz argue that the four affiants should have signed four separate affidavits, before separate notaries. They also argue that the affidavit should have stated that "the person properly circulated the complaint *actually containing its allegations,* that the signatures were correct, that the residences were correct, and that they were registered electors." (emphasis in original).

**18.** Wood and Shultz argue that the testimony they offered was admissible to prove the state of mind of these electors at the time they signed the complaint. This argument reflects a misunderstanding of the hearsay objection to the evidence offered. The objection was not that what these electors were told when they signed the complaint constituted inadmissible hearsay. If the electors themselves had appeared in court and testified as to what they were told when they signed the complaint, this testimony would have been admissible to prove their state of mind. Indeed, those electors who did appear in court were allowed to testify as to what they were told when they signed the complaint. However, Wood and Shultz wanted to testify about statements made to them by the electors some time after the electors signed the original complaint. These statements were out of court declarations, offered for the truth of the matter asserted, for which there is no exception to the hearsay rule.

or neglects to perform his duties." [19]  Pursuant to this provision, a township supervisor may be removed for failure to perform duties required of him by the Second Class Township Code or other applicable statutes. *Foltz Appeal*, 370 Pa. 567, 88 A.2d 871 (1952) (dictum); *Crane's Appeal*, 344 Pa. 624, 26 A.2d 457 (1942). We conclude the trial court's findings of fact are supported by the record, and demonstrate that Wood and Shultz have failed to perform their duties in several significant respects.

The court found that the supervisors failed to keep proper records of township proceedings, and failed to follow proper procedures in performing official acts. The court found:

"1. [The supervisors] failed to keep full and accurate minutes of their meetings and the conduct of official township business in violation of Section 513. [20]

2. They failed to keep complete and accurate financial records of all township monies, and to have regular reports made thereof to the Board at its regular meetings in violation of Section 532. [21]

  .    .    .    .    .

5. They failed to keep a full and complete record of having advertised for bids when required, under the provisions of Section 802 of the Township Code [22] and made payment of bills of the township without official board action reflected in the minutes."

Section 513 of the Second Class Township Code imposes a duty on the supervisors to keep minutes of their proceedings:

"The board of township supervisors *shall* keep minutes of its proceedings  .  .  .. All such books shall be open for the inspection of any elector or taxpayer  .  .  .."

19.  53 P.S. § 65503.

20.  Id. § 65513.

21.  Id. § 65532.

22.  Id. § 65802.

(emphasis added).[23] The importance of adequate records should be stressed, for these records enable the Township Auditors, as well as electors and taxpayers, to determine what actions have been legally approved by the Board of Supervisors, and whether the supervisors have lived up to their public trust. See Pennsylvania State Association of Township Supervisors, Handbook for Township Officials 34–35.[24]

The record supports the trial court's determination that the supervisors failed to perform this duty. The accountants who audited the Township criticized the minutes for failure to record the advertisement for bids pursuant to section 802 of the Second Class Township Code,[25] and for failure to indicate when the opinion of the township solicitor was requested.[26] The supervisors also paid township bills

**23.** Id: § 65513 (Supp.1977); see *Crane's Appeal*, 344 Pa. at 627, 26 A.2d at 459 ("The ordinary signification of the verb 'shall' as used in the [Second Class Township Act] is imperative and not permissive unless the latter meaning is required by the context."). Wood and Shultz rely on *Price v. Taylor Borough School District*, 157 Pa.Super. 188, 42 A.2d 99 (1945), for the proposition that the duty to keep minutes is "directory and not mandatory." The question presented in *Price*, however, was whether failure to take minutes invalidated a vote taken by the Board. Although the court held a vote could be given effect even though it was not recorded, it clearly recognized that the duty to take minutes was not permissive or discretionary, and does not excuse the failure to comply with this duty.

**24.** Referring to the "gross informality" with which the Franklin Township Board of Supervisors conducted its financial affairs, including such actions as the payment of bills without board approval, and the borrowing of $10,000 more on the tax anticipation loan than was approved by the Board, the court stated:
"In point of fact, it is the absence of adequate minutes, as well as a similar absence of full and complete business records being kept by the board . . . which has so well hidden the full scope of the disdain the board has shown for lawful regularity in the conduct of the Township affairs."

**25.** 53 P.S. § 65802 (Supp.1977). This section requires advertisement for bids for certain contracts entered into by second class townships, and that the bids be accepted by public announcement at the meeting at which they are received, or at a subsequent meeting.

**26.** The accountants' report stated:
"The Board minutes are the only official record of what transpires in the meetings and completeness is essential so that all the facts are shown as they happened.

without official board action reflected in the minutes.[27] McNeely testified that the minutes for 1974 and 1975 were not even typed, and thus were not available to the public as required by section 503 of the Second Class Township Code, until January, 1976.[28] As the court observed, the minutes "are so patently crude and incomplete it is almost impossible to tell what township business was lawfully transacted . . . with respect to the purchase of equipment and supplies."

Closely related to the failure to keep proper minutes is the failure to keep accurate financial records, and to make reports at regular meetings of the Board. Again the duties imposed by the Second Class Township Code are clear:

"The township treasurer . . . shall keep distinct and accurate accounts of all sums received from taxes and

It appears that the Board is not complying with Section 802 of 'The Second Class Township Code' concerning the reporting of bids of items in excess of $1,500. First, the minutes do not clearly state when the Board wishes to receive bids on an item. Secondly, once the items are bid the minutes do not clearly state when the sealed bids were opened, who submitted bids or the prices submitted. Finally, when the bids are awarded the minutes do not always state who received the bid, at what price the item was awarded, whether it was the lowest bid, or whether the bid met all the specifications.

It also appears that the official minutes were not signed by the secretary nor do they indicate if the solicitors opinion had been requested before certain Board actions were taken."

Wood and Shultz concede that the minutes are deficient in regard to the reporting of advertisement for bids, but claim that the record does not indicate that they failed to advertise for bids when required to do so by section 802, id. This does not excuse their failure to keep adequate records, however.

27. Wood and Shultz concede that the minutes were deficient in this regard, but contend that there is no proof that township money was misappropriated. Again, the absence of proof of improper expenditures does not excuse the failure to keep adequate records, especially since these records provide the means by which the Township Auditors and the public may scrutinize these transactions. See note 24, supra.

28. McNeely's testimony was contradicted by Wood and Shultz. Shultz did admit, however, that the minutes were inadequate, and that copies of the minutes of previous meetings were not always made available to the other supervisors before each meeting.

other sources, which account shall be open to the inspection of the supervisors and taxpayers of the township." [29]

Accurate accounts must be kept for the same reasons that adequate minutes of Board proceedings are required. See Pennsylvania State Association of Township Supervisors, Handbook for Township Officials 34–35. Yet, as the trial court found:

"[T]he books of accounts of the township were kept in such a careless fashion that the Board at any regular meeting could not know, and actually had no way of knowing where the township finances stood at any given time . . . there being no Treasurer's report regularly made and kept. The only apparent record that existed was the record contained in the check book of the Treasurer." [30]

This finding is supported by McNeely's testimony. He testified that at many meetings he was unable to obtain the balances of the Township's accounts.[31] No official treasurer's report was submitted at any meeting of the Board in either 1974 or 1975. Clearly, the supervisors have failed to

**29.** 53 P.S. § 65532 (1957). Shultz was chosen by the supervisors as township treasurer. In this appeal, Wood makes no claim that the duties imposed by this section apply only to Shultz, and that he has no duty to make sure that this provision is complied with.

**30.** The record indicates that Franklin Township overspent its 1975 budget by $122,587, and overspent its 1975 revenues by $90,962. In 1974 the Township had a surplus of $18,000. The trial court concluded that the deficit might have been avoided if the Board had kept proper records, and followed the procedures required by law, which would have apprised it of the financial condition of the Township.

**31.** There was conflicting testimony on this point. Wood and Shultz claim that "[d]espite the lack of detailed information concerning township finances, . . . the supervisors were apprised of the financial condition of the township at each meeting." The trial court found to the contrary, however, and the record supports its finding. The trial court was not required to credit the testimony given by the witness called by Wood and Shultz. See e. g., *Kay v. Kay*, 460 Pa. 680, 334 A.2d 585 (1975).

perform their duty to maintain adequate records of the accounts of the Township.[32]

In summary, the record supports the findings of fact and conclusions of law that Wood and Shultz have failed to perform their duties within the meaning of the Second Class Township Code.[33]   As the trial court stated:

> "[T]he business of the township involving the handling of funds in the amount of approximately one quarter of a million dollars, has been conducted with gross informality, inattention to official duties and indifference that demonstrate a cupable [sic] peverseness [sic] and indicates on the part of the officers, an insensitivity to the public trust."

D.   Finally, Wood and Shultz challenge the constitutionality of section 503 of the Second Class Township Code. They argue that the statute fails to provide them with due process, and that section 503 violates article VI, section 7 of the Pennsylvania Constitution.   These issues were not raised in preliminary objections, or in the answers filed by Wood and Shultz, and therefore have been waived.   Pa.R.C.P. 1032.

The order of the court of common pleas is reversed as to McNeely, and affirmed as to Wood and Shultz.

NIX, J., filed a concurring and dissenting opinion in which MANDERINO, J., joins.

NIX, Justice, concurring and dissenting.

The action seeking the removal of two supervisors of Franklin Township, Mr. Charles Wood and Ms. Norma Shultz, was commenced under Section 503 of the Second Class Township Code, Act of May 1, 1933, P.L. 103, § 503, *as amended*, 53 P.S. § 65503 (1957).   Section 503 provides:

**32.** Wood and Shultz claim that no misappropriation of funds has been proven, but this cannot excuse the failure to keep adequate records.

**33.** Because we find that Wood and Shultz failed to perform their duties to keep adequate minutes of township proceedings, and accurate accounts of township finances, we need not address the other reasons for removal relied on by the trial court.

## § 65503.  Penalty for failure to perform duties

If any township officer refuses or neglects to perform his duties, the court of quarter sessions, upon complaint in writing by five percentum of the registered electors of the township, may issue a rule upon such officer to show cause why his office should not be declared vacant and another appointed in his stead.  Such rule shall be made returnable not less than two weeks from its date of issue.  Upon hearing, and proof that the facts alleged in the complaint are true, the court may declare the office vacant and appoint another in his stead, to hold office during the term of the officer deposed, or to make such other order as to the court may seem just and proper.  1933, May 1, P.L. 103, art. V, § 503;  1947, July 10, P.L. 1481, § 5.

It is clear that jurisdiction is vested in the court under this Section only after a complaint in writing "by five percentum of the registered electors of the township" has been filed with that court.  Minimum due process would necessarily require that the person or persons towards whom the complaint is directed must be provided with some opportunity to challenge the legitimacy of the purported signatures.  Such challenge would extend not only as to whether or not the persons signing the document were in fact qualified electors but also would include objections that the signatures were forgeries or that the persons signing were not aware or were misinformed as to the content of the complaint.  My reading of the record convinces me that the appellants, Wood and Shultz, were denied this fundamental right.  For that reason I believe the proceedings below were a nullity and the order of the court below should be reversed.  I concur in the result reached by the majority with regard to the appeal of Allen B. McNeely.

As recited by the majority upon being notified of the filing of the said petition, Wood and Shultz proceeded to contact the alleged signatories of the complaint.  By the time of the date set for hearing, they had successfully contacted 109 of the 271 purported signers and of the 109 individuals who had been reached, 100 of those persons

indicated a defect in their endorsement to the petition and requested their signatures be withdrawn. The information obtained by Wood and Shultz, as a result of their contact with the various alleged signatories, indicated that misinformation had been given in an effort to induce voters to sign the petition; that others were not given a sufficient opportunity by the circulators to fully read the contents of the complaint; and still others were never presented the complaint to be read.

Rather than make some effort to inquire further into the legal sufficiency of the complaint, the hearing court saw fit to restrain appellants, Wood and Shultz, from further contact with the purported signatories. The justification for this action was the assertion by the proponent of the complaint that Wood and Shultz were "harassing" the electors. No opportunity was given to Wood or Shultz to answer that allegation. Nor did the court seek an alternative method to ascertain the legitimacy of the complaint in view of the questions that should have been raised as a result of the findings submitted by Wood and Shultz.

The majority chose not to address the issue of the validity of the restraining order classifying it as a special injunction which should have been pursued in a separate appeal. A separate appeal would be the proper procedural tack in the case of a special injunction pursuant to Pennsylvania Rule of Civil Procedure 1531. Act of February 14, 1866, P.L. 28, § 1, 12 P.S. § 1101. See, Rosenzweig v. Factor, 457 Pa. 492, 327 A.2d 36 (1974). However, the challenged order was clearly not a special injunction pursuant to Rule 1531 but merely an ancillary ruling during the course of the underlying action in this case.[1] As a ruling during the course of the proceedings

---

1. Pa.R.C.Pro. 1531 provides this special relief in actions in equity. The instant case was an action at law. Further, the rule requires written notice and hearing absent a showing of immediate and irreparable injury. Even where there is an averment of immediate and irreparable injury, such a claim must be raised and supported by a petition or other affidavits. The rule also provides that an appropriate bond must be required. Clearly there was no intent either by the party seeking relief or the court in granting it to have been acting pursuant to Rule 1531.

appellants did properly assign it as a ground of error for review in this direct appeal.

With regard to the merits, in my judgment, the actions of the hearing court were clearly violative of the most fundamental due process concepts. While it is quite understandable that a court would not condone harassment of the signatories, there was here an insufficient basis upon which to conclude that any harassment had in fact occurred. Further, it remained uncontradicted that at least 100 of the 109 individuals contacted had reported circumstances which, if believed, would invalidate their signatures. It is clear that it was incumbent upon the court to make some further inquiry as to the legitimacy of the other purported signatures which were necessary to provide the court with jurisdiction to proceed further in this action. The court's failure in this regard, in my judgment, was fatal.

MANDERINO, J., joins in this opinion.