597 A.2d 253

In re BIRMINGHAM TOWNSHIP, DELAWARE COUN-
TY/Complaint to Have the Offices of Helen A. Bauman and
Darrell B. Lewis, Township Supervisors, Declared Vacant.

Appeal of ELECTORS of BIRMINGHAM TOWNSHIP.

Commonwealth Court of Pennsylvania.

Argued June 12, 1991.

Decided Sept. 6, 1991.

318

Katharine S. Brigham, for appellants.

Garland D. Cherry, Sr., for appellees.

Before CRAIG, President Judge, and DOYLE, COLINS, PALLADINO, McGINLEY, SMITH and PELLEGRINI, JJ.

PELLEGRINI, Judge.

Appellants, 144 electors (Electors) of Birmingham Township (Township), appeal from an Order of the Delaware County Court of Common Pleas (trial court) denying their Petition for an Order Disqualifying Garland D. Cherry Sr., Esquire, (Attorney Cherry) from participating as counsel in the action, and denying their Petition for an Order directing that the defense of the named Township Supervisors, Helen A. Bauman and Darrell B. Lewis, not be paid out of Township funds.

In November of 1990, Electors, who are over five percent of the registered electorate in the Township, filed a Complaint with the trial court pursuant to Section 503 of The Second Class Township Code [1] seeking to have the offices of two members of the Township's Board of Supervisors (Board), Bauman and Lewis, declared vacant. This type of action is commonly referred to as a "recall action." The

1. Act of May 1, 1933, P.L. 103, *as amended*, 53 P.S. § 65503. This section of the Second Class Township Code provides in relevant part: If any township officer refuses or neglects to perform his duties, the court of quarter sessions, upon complaint in writing by five percentum of the registered electors of the township, may issue a rule to show cause why his office should not be declared vacant and another appointed in his stead.

Complaint alleged that the supervisors violated Sections 501, 513, 533, 701, and 801 of the Second Class Township Code [2] with respect to their dealings with Donald Lawrence, a developer and applicant seeking approval of a subdivision plan for his land which abutted property belonging to Supervisor Bauman and her husband. (Reproduced Record pages 8–13).

More specifically, the Complaint contained fourteen paragraphs of alleged violations of the Second Class Township Code by the supervisors, two of which contained allegations of conduct which possibly could be subject to criminal prosecution. Paragraph 4(f) alleged that the supervisors violated Section 501 of the Second Class Township Code, 53 P.S. § 65501, which requires the supervisors to vow to perform their duties with fidelity, when they used their office to extort land and money from the developer. Paragraph 4(k) alleged that the supervisors again violated Section 501 of the Second Class Township Code when they conspired to exert their authority against the developer illegally and in excess or contravention of state and federal law including the crimes of official oppression and criminal conspiracy, attempt and solicitation. The other twelve paragraphs alleged non-criminal conduct of the supervisors which amount to violations of the Second Class Township Code.

A recall action, by definition, is brought where a township officer refuses or neglects to perform his duties. 53 P.S. § 65503. Our Supreme Court has held that in order for township officers to be removed from office under Section 503 of the Second Class Township Code for neglect or failure to carry out their duties, there must be a showing of perverseness which amounts to criminal or culpable indifference to their official duties, or a willful violation of the mandatory duties imposed by statute or township ordinance. *Matter of Franklin Township Board of Supervisors,* 475 Pa. 65, 379 A.2d 874 (1977); *In re Shoaf,* 370 Pa. 567, 88 A.2d 871 (1952).

2. 53 P.S. §§ 65501, 65513, 65533, 65701 and 65801.

To defend this recall action, the Board authorized payment of attorney fees for the defense of the two supervisors.[3] Electors then filed a Petition seeking an Order directing that the defense of the supervisors not be paid for out of Township funds and seeking to disqualify Garland D. Cherry Sr., Esquire from representing the supervisors (Petition).

In their Petition, Electors contended that the supervisors are not entitled to a public defense if they are charged with the commission of crimes as opposed to technical noncriminal activities in violation of the Second Class Township Code. Electors also contended that Attorney Cherry should be disqualified from acting as counsel to the supervisors by virtue of his representation of the conflicting interests of the Township and the supervisors in *Lawrence et al. v. Birmingham Township et al.*, C.A. 89–2096, (E.D.Pa.1989) (*Lawrence* matter), a matter directly related to this recall action.[4]

On February 4, 1991, the trial court held a hearing on Electors' Petition. Following the hearing, the trial court issued an Order denying Electors' Petition. Electors then filed a Petition requesting the trial court to certify an interlocutory appeal pursuant to Section 702(b) of the Judicial Code, 42 Pa.C.S. § 702(b) which the trial court denied. Electors then filed a Petition for Review (pursuant to the note to Pa.R.A.P. 1311) to this court, which we granted on February 27, 1991.

3. On November 1, 1990, the supervisors and the Township retained Attorney Cherry to represent them. A special meeting was held on December 28, 1990, whereby the Township's Board of Supervisors voted to retain Attorney Cherry to represent the Township and the supervisors as of November 1, 1990, at a rate of $200.00 an hour, in the *Lawrence* matter, the recall action, and a surcharge action filed against the supervisors. (202–203).

4. This prior matter was an action filed by Donald Lawrence against the Township and Supervisors Bauman and Lewis and removed to the Federal District Court for the Eastern District of Pennsylvania. Lawrence's action involved alleged violations of Section 1983 of the Civil Rights Act, 42 U.S.C. § 1983, as well as violations of the Racketeering Influenced and Corrupt Organization Act (RICO), 18 U.S.C. § 1962(c).

## I. Disqualification

Electors contend that Attorney Cherry should be disqualified because he is representing two clients, the Township and the supervisors, who have adverse interests in this proceeding.[5] They also argue that his representation of the Township in the *Lawrence* matter precludes him from representing the supervisors in this action since they have adverse interests.

■ An attorney's conduct concerning the representation of his client is governed by the Rules of Professional Conduct (Rules).[6] Rule 1.7 deals specifically with conflict of interests and states in relevant part:

(a) A lawyer shall not represent a client if the representation of that client will be *directly adverse* to another client, unless:

(1) the lawyer reasonably believes the representation will not adversely affect the relationship of the other client; and

(2) the client consents after consultation.

204 Pa.Code § 84.1 (emphasis added). This concept also applies where the lawyer's representation of a client may be "materially limited" by the lawyer's responsibility to another client. Rule 1.7(b). Moreover, when a lawyer attempts to represent multiple clients in a single matter, the consultation must include an explanation of the implication of common representation and the advantages and risks involved. Rule 1.7(b)(2).

■ A Motion to Disqualify will also be granted if the representation is *against* an existing client if the representation interferes with the duty of undivided loyalty which the lawyer owes to each of his clients, or if the representation is *against* a former client when a substantial relationship exists between the subject matter of each representa-

---

**5.** The issue of whether the Electors had standing to seek disqualification of Attorney Cherry was not raised.

**6.** Adopted October 16, 1987 by the Supreme Court of Pennsylvania, effective April 1, 1988. The Rules supersede the prior Code of Professional Responsibility. 204 Pa.Code § 81.4

tion. *Ettinger v. Cranberry Hill Corp.,* 665 F.Supp. 368 (M.D.Pa.1986); *See also Kaminski Brothers, Inc. v. Detroit Diesel Allison,* 638 F.Supp. 414 (M.D.Pa.1985).

In the *Lawrence* matter, Attorney Cherry filed an appearance on behalf of the supervisors and the Township in Federal Court following problems with a proposed settlement.[7] (113). In the recall action here, Attorney Cherry has only filed an appearance on behalf of the supervisors. (71). Although given the authority by the Board to represent the Township in this matter, *See* Footnote # 3, that authority is meaningless because the Township cannot be a party to the recall action. The only parties to the recall action are the Electors who signed the Complaint and the supervisors against whom the action is brought. The Township is not a named party nor can it be. The Township is merely a interested bystander to an action between its citizens and their elected officials.

Since the Township is not a party and cannot be represented at the recall action, Attorney Cherry cannot be representing the supervisors against the Township in the same case and thus no such conflict of interest exists.[8] The

7. The initial counsel in the *Lawrence* matter, Township Solicitor Edward J. Carney, Jr., Esquire, was disqualified from acting as counsel because of his role as a potential witness in that case. (116, 131). The supervisors and the Township were then represented by the Township's insurance pool attorney, Glen Equi, Esquire, who agreed on a proposed settlement prior to trial on September 17, 1990.

However, problems developed between the parties concerning the proposed settlement which led Lawrence to file a Motion to Enforce Settlement Agreement, at which time Attorney Cherry was retained. *See* Footnote # 3. The District Court subsequently denied the Motion to Enforce finding that the settlement was not properly ratified by the Township. (130–142). However, the *Lawrence* matter was subsequently settled.

8. Electors, however, claim that Attorney Cherry is actually representing the Township and point to one statement made by Attorney Cherry in his Answer to their Petition which stated "Wherefore, Respondent, Birmingham Township, respectfully requests the denial of the requested relief and the dismissal of the petition." (120). Any statements in the pleadings by Attorney Cherry which give the impression that he is acting on behalf of the Township in this action are incorrect and should be disregarded. Moreover, because the Town-

only possible conflict would be that created by Attorney Cherry's representation of the Township in the *Lawrence* matter if the interests of the supervisors and the Township are adverse to each other in this case.

In their Petition, Electors argued that Attorney Cherry participated in hearings in the *Lawrence* matter involving whether the proposed settlement should be enforced arguing that, in the best interests of the supervisors, the settlement should be repudiated, when it was in the best interest of the Township to have the settlement enforced. Electors contend that this prior conflict rendered Attorney Cherry incapable of representing the supervisors in the recall action.

However, since we have found that the Township has no interest in the recall action, any prior representation of the Township in the *Lawrence* matter is immaterial. The interests of the supervisors and the Township cannot be adverse and thus there is no possibility that the interests of either one would be compromised. As such, the trial court was correct in refusing to disqualify Attorney Cherry.

## II. Counsel Fees for Defense

The second contention of the Electors is that the two supervisors should pay for their own defense because there are allegations contained in the Complaint of a criminal nature. The Electors argue that under the reasoning of *Silver v. Downs*, 493 Pa. 50, 425 A.2d 359 (1981), when a township official is the subject of a recall action based on charges of a criminal nature, the official is not entitled to a public defense at the expense of the township taxpayers. They argue that as a matter of public policy, wrongdoing should not be rewarded.

Section 582 of the Second Class Township Code provides in relevant part:

The township solicitor, *when directed* or requested so to do, shall ... *defend* all actions or suits against the

ship cannot be a party, Attorney Cherry cannot file an appearance nor a Petition to Intervene on its behalf.

township, *or any officer thereof,* wherein or whereby any of the estates, *rights,* privileges, trusts, *ordinances,* or *accounts,* of the township, may be brought in question before any court in the Commonwealth....

53 P.S. § 65582 (emphasis added).

The Supreme Court in *Silver v. Downs* held that where the challenged conduct in a recall action was undertaken in the supervisors' official capacity, they are entitled to a defense under Section 582 of the Second Class Township Code. The Supreme Court stated that:

The cost of legal counsel is but one of a multitude of expenses which the township must incur in connection with the institution of recall proceedings.... In view of the unquestionable importance of proper and thorough adjudication of the merits in such actions, legal costs, like any other associated expenses, are merely part of the price which we must pay for permitting the implementation of an extraordinary part of the democratic process.

*Silver v. Downs,* 493 Pa. at 58–59, 425 A.2d at 364.

However, in a footnote, the Supreme Court emphasized that "this matter does not involve a charge of criminal misconduct, which by its very nature could not be performed in any official capacity." *Silver v. Downs,* 493 Pa. at 58 n. 8, 425 A.2d at 363 n. 8. Moreover, when discussing the facts, the Supreme Court stated that the allegations "primarily focus[ed] on the handling of township accounts. No allegation has been made, however, of fraud, embezzlement or other criminal conduct." *Silver v. Downs,* 493 Pa. at 53, 425 A.2d at 361. Because of this language, the Electors contend that the Supreme Court has taken the position that if acts of a criminal nature are alleged, the official is not entitled to a public defense.[9]

9. Here, Township Solicitor Carney declined representation because of his role as a potential witness. (73–74). The Board therefore voted to retain private counsel for the supervisors. *See* Footnote # 3. Substitute counsel can be obtained whose fees must be paid out of township funds if the recall action falls within the type of action which the solicitor has a duty to defend as provided in Section 582 of the Second

The Supreme Court in *Silver v. Downs* established the rule that in a recall action, those officials facing a possible recall ordinarily have the right to a defense paid out of township funds. The Supreme Court implicitly stated however, that when the conduct alleged was of a criminal nature, the defense should not be available. The two main concerns addressed by the Supreme Court were that township officials should not be forced out of office in order to avoid the substantial legal costs of defending their official actions but also that the local government should not pay for the defense of an official who committed an act of criminal misconduct while in office. *See Silver v. Downs*, 493 Pa. at 55–57, 425 A.2d at 362–364.

■ Addressing these concerns, we believe the Supreme Court in *Silver v. Downs* envisioned a procedure where if the local government votes to provide a defense in a recall action, that decision can be challenged by the electors at a hearing held to determine if substantial evidence exists that the official in question committed an act of criminal misconduct, fraud, embezzlement or other criminal conduct found in *Silver v. Downs* to be of the type which could not be taken in any official capacity. If substantial evidence is found to exist to support the allegation of criminal conduct, the public official should be denied a public defense.[10]

We believe that such a hearing would satisfy the Supreme Court's concern that a public official could be driven from office by a baseless allegation of possible criminal conduct occurring during the undertaking of an official duty made by a mere five percent of the electorate. It would be rare public servants, however dedicated, that would risk substantial personal resources to defend themselves in such a case given even a strong possibility that

Class Township Code. *See Silver v. Downs*, 493 Pa. at 57 n. 6, 59, 425 A.2d at 363 n. 6, 364.

10. However, an official should not be totally deprived of a public defense when the recall complaint also contains several allegations of non-criminal conduct for which they are clearly entitled to such a defense under *Silver v. Downs*. Only hours spent on the defense of the alleged criminal conduct will not be reimbursed.

they would ultimately prevail. Moreover, such a hearing would also satisfy the concern that the local government would have to pay for the defense of a public official's criminal conduct.

■ However, to insure that a public official receives legal representation in defending his or her official actions, we believe that if the official is denied a public defense and it is later judicially determined that substantial evidence did not in fact exist to support the allegation, the official is entitled to reimbursement from the local government for attorney fees and costs expended in defending that allegation. Conversely, to foreclose the possibility that the local government would have to pay for the defense of a public official's criminal conduct, we believe that if the official is provided with a public defense and it is later judicially determined that the official did in fact commit the criminal conduct resulting in his or her removal from office, the local government is entitled to recover the attorney fees and costs of defending that particular allegation.[11]

■ In the present case, the supervisors are entitled to a public defense because all we have are mere allegations of criminal conduct with absolutely no substantial supporting evidence. A review of the testimony presented at the hearing on the Petition reveals that the Electors failed to produce any evidence regarding the validity of the allega-

---

11. This is similar to the procedure under Sections 8547, 8548 and 8550 of the Judicial Code commonly referred to as the Political Subdivision Torts Claim Act, 42 Pa.C.S. §§ 8547, 8548, 8550. Section 8547 provides that a local agency shall provide legal assistance to an employee subject to a suit for damages arising within the scope of his or her official duties, and requires reimbursement if the local agency refuses and it turns out the employee was, or in good faith believed to be, acting in his or her official capacity. 42 Pa.C.S. § 8547. Section 8548(b) precludes a local agency from seeking a surcharge, contribution, indemnity or reimbursement for any expense or legal fee incurred while defending an employee acting in their official capacity. 42 Pa.C.S. § 8548. However, Section 8550 states that if it is judicially determined that the act of the employee constituted a crime, actual fraud, actual malice or willful misconduct, the provision in Section 8548 precluding a local agency from seeking reimbursement of attorney fees and costs does not apply. 42 Pa.C.S. § 8550.

tions of possible criminal conduct. Electors did not present any discovery or witness testimony which would give credence to the allegations nor did they present any evidence that the supervisors have been indicted or that criminal charges have been filed or are pending.

During the hearing, the trial court repeatedly asked for evidence stating "I'm telling you [Electors' counsel] right now, I can't do anything without some evidence and that's what I was asking for in the first place." (223–224). The trial court also demonstrated great concern over denying the supervisors a public defense absent evidence supporting the allegations stating "I don't know that these allegations really exist." (226). The trial court further stated that "[b]ut the fact that they're charged causes a spring toward guilty and that's exactly what you [Electors' counsel] have argued." (241). In closing, the trial court stated "[w]hat it comes down to is this: that all you have to do is bring charges against one of the commissioners [sic] and there out, that's it. They get no representation.... You could remove a whole board of commissioners." (242–243). Thus, the Electors failed to produce substantial evidence before the trial court to support the allegations. Therefore, the supervisors are entitled to a public defense.[12]

Accordingly we will affirm the trial court's Order denying Electors' Petition, and remand the case for further proceedings.

## ORDER

AND NOW, this 6th day of September, 1991, the Order of the Delaware County Court of Common Pleas dated February 4, 1991, is affirmed and remanded for further proceedings.

Jurisdiction relinquished.

Concurring opinion by PALLADINO, J.

12. As we previously stated, this does not preclude a possible recovery of attorney fees and costs at the end of the trial on the recall action.

PALLADINO, Judge, concurring.

I concur in the result only. The majority correctly concludes that the Supervisors are entitled to a public defense in the recall action. However, I disagree with the majority's statement that *Silver v. Downs*, 493 Pa. 50, 425 A.2d 359 (1981) envisioned a procedure where, if the local government votes to provide a defense in a recall action, that decision can be challenged by the electors at a hearing held to determine if substantial evidence exists that the official in question committed an act of criminal misconduct, fraud, embezzlement or other criminal conduct.

*Silver* does not authorize the procedure sanctioned by the majority: to wit a hearing in a recall action to determine whether substantial evidence supports charges alleging criminal misconduct.

*Silver* declares the proposition that, pursuant to Section 582 of the Second Class Township Code, Act of May 1, 1933, P.L. 103, *as amended*, 53 P.S. § 65582,[1] Township Supervisors are entitled to representation, at public expense, in recall actions. The Supreme Court reasoned that the cost of legal counsel is but one of a multitude of expenses which the township must incur in connection with the institution of recall proceedings because few public servants, however dedicated, would risk substantial personal resources to defend their official acts.

The fact that the petitioners have crafted their recall allegations to also imply criminal misconduct for which a supervisor may be individually responsible is irrelevant. As the majority correctly notes, by its very nature, petitioners in all recall actions must allege that an official neglected or failed to carry out official duties which amount to criminal or culpable indifference to their official duties. *See Matter of Franklin Township Board of Supervisors*, 475 Pa. 65,

---

1. This section provides in pertinent part as follows:
 The township solicitor, when directed or requested to do so, shall ... defend all actions or suits against the township, or any officer thereof, wherein or whereby any of the estates, rights, privileges, trusts, ordinances or accounts, of the township, may be brought in question before any court in the Commonwealth ...

379 A.2d 874 (1977). Therefore, any allegations of criminal misconduct relevant in a recall action must necessarily be related to the supervisor's official actions and, pursuant to the public policy enunciated in *Silver*, the supervisor is entitled to representation at public expense. If a township supervisor is prosecuted for such criminal conduct, then of course he must bear the cost of his own defense.

In the case before us, the two allegations which the majority characterizes as possibly leading to criminal prosecution are allegations based upon misuse of the Supervisors' public offices in connection with a developer's subdivision application. Clearly, those actions taken while an application for approval of a subdivision was pending, are well within the Supervisors' official duties. Consequently, any recall action based on those official acts entitles the Supervisors to representation at taxpayer expense.