389 A.2d 568

AMERICAN DREDGING COMPANY, Appellee,

v.

CITY OF PHILADELPHIA, Appellant,

v.

The PARTNERSHIP OF MUESER, RUTLEDGE, WENT-WORTH & JOHNSTON, and its partners Individually, William H. Mueser, Paul Wentworth, Philip C. Rutledge, Robert C. Johnston and S. V. DeSimone and the Ballinger Company, a partnership, and the Individual partners, Robert S. Ballinger, Jr., John Demoll and Louis Demoll

v.

EDWARD A. MAGUIRE, INC.

Supreme Court of Pennsylvania.

Argued Oct. 21, 1977.

Decided July 19, 1978.

178

Truscott & Erisman, William L. Gaunt, Otis W. Erisman, Philadelphia, for appellant.

Mark D. Alspach, Richard P. Brown, Jr., Philadelphia, for appellee, American Dredging.

Glenn C. Equi, Philadelphia, for appellee, Ballinger Co.

Daniel Mungall, Jr., Philadelphia, for appellee, Edw. A. Maguire, Inc.

James D. Wilder, Philadelphia, for appellees, Mueser, Rutledge, Wentworth & Johnston.

M. Carton Dittmann, Jr., Philadelphia, for appellee, Phila. Port Corp.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and PACKEL, JJ.

## OPINION

MANDERINO, Justice.

In February 1972, American Dredging Company (American), the general contractor for the Tioga Marine Terminal Site Construction contract, brought suit on its behalf and on behalf of its subcontractor, Arundel Corporation (Arundel), against the City of Philadelphia (City). The suit claimed damages in excess of five million dollars for delays and other problems allegedly caused by the Philadelphia Port Corporation (Port Corporation), an agency of the City to which management and supervision of the construction of the Tioga Marine Terminal had been delegated. The procedural complexities of the litigation are not relevant here and need not be discussed. Suffice it to say that the matter was eventually scheduled for trial. On November 22, 1976, at a pretrial conference held the day before the scheduled commencement of trial, City orally moved to disqualify plaintiff's co-counsel from participation in the case. City's motion was based on alleged violations of Canons 4, 5, and 9, of the Code of Professional Responsibility.

The Code of Professional Responsibility, adopted by us as the standard of conduct for attorneys of all courts of the Commonwealth, 455 Pa. lvii, is comprised of three distinct but related parts: (1) Canons, which provide general "axiomatic norms" for the legal profession to follow: (2) Ethical Considerations, which are applicable principles, "aspirational in character:" and (3) Disciplinary Rules, which are mandatory and "state the minimum level of conduct below which no lawyer can fall without being subject to disciplinary action." Code of Professional Responsibility, Preliminary Statement.

The trial court denied City's motion to disqualify. Pursuant to City's petition to the Superior Court for allowance of an interlocutory appeal, the trial court certified that its interlocutory order involved a controlling question of law as to which there was substantial ground for disagreement, and that an immediate appeal from that order could materially

advance the ultimate termination of the case. In a memorandum opinion filed subsequent to this order, the trial court stated that it had denied City's motion to disqualify because it was untimely. The trial court did not discuss the merits of City's position. On appeal, the Superior Court affirmed in a per curiam opinion, stating simply that "[t]he motion to disqualify was untimely filed." *American Dredging Co. v. City of Philadelphia*, 246 Pa.Super. 654, 372 A.2d 848 (1977). We granted City's petition for allowance of appeal and this appeal followed.

The facts pertinent to City's claim of ethical violations are these. At the time of the motion to disqualify, as well as for a period of approximately 11 months prior to that time, Richard P. Brown, Jr., a partner in the Philadelphia office of the law firm of Morgan, Lewis and Bockius, was counsel of record for Arundel, subcontractor to plaintiff American, and a party in interest in American's suit against City although not a named plaintiff. Underlying City's petition were the following allegations: (1) that John P. Bracken, a partner in the Morgan, Lewis and Bockius firm, was an officer, an Executive Committee member, and a Board member of Port Corporation, the instrumentality and agent of the defendant City; (2) that Port Corporation supervised and managed the Tioga Marine Site Terminal project for City, and that it was Port Corporation's actions in that capacity that formed the subject of the litigation commenced by American; (3) that by virtue of Bracken's relationship with Port Corporation, he had received certain confidential information regarding the facts of the litigation commenced by American; (4) that City would be relying on the records and testimony of present or former Port Corporation employees in its defense against American's claims; and (5) that, at the very least, an appearance of impropriety resulted from the simultaneous existence of Bracken's relationship with an agency of defendant City, and representation of American and Arundel, by Bracken's law partner.

Stripped of their procedural trappings, and reduced to simplest terms, the questions before us are: (1) whether

under the facts of this case, City's motion to disqualify was timely filed, and if so, (2) whether the Canons of the Code of Professional Responsibility bar an attorney from representing the plaintiff in a lawsuit when a partner in that attorney's law firm holds a position of substantial responsibility as an officer and board member of the defendant. We believe both questions should be answered in the affirmative. We therefore reverse the Superior Court's order affirming the trial court's dismissal of City's motion to disqualify. We also order that Richard P. Brown, Jr., and the law firm of Morgan, Lewis and Bockius be disqualified from representing Arundel and American in this matter.

Initially, Brown and Morgan, Lewis and Bockius argue that City's motion to disqualify was properly dismissed because untimely filed. In support of this position it is argued that Brown entered his appearance as co-counsel for American on December 2, 1975, at which time City was represented by the City Solicitor's office; that the City Solicitor was both a Port Corporation Director and member of its executive committee while American's suit against City was pending, and that, therefore, City knew of the relative positions of Brown, and Bracken, his partner at Morgan, Lewis and Bockius. Because City raised no objection to Brown's representation of Arundel or his appearance as co-counsel for American until November 22, 1976, Brown and his law firm now contend that such a motion to disqualify is too late.

City counters that special counsel now representing City is not a member of the City Solicitor's office; that special counsel entered the case only two and one-half months prior to November 22, 1976, and realized the significance of the relationship between Brown and Bracken on the eve of the pretrial conference when a memorandum was discovered indicating that Bracken had received certain information vital to plaintiff's case against City. Alternately, City argues that even if its motion to disqualify was untimely filed, such lack of promptness should not bar City's motion because a motion for disqualification is in the public interest and courts may not act contrary to that interest by permit-

ting one party's delay in moving for disqualification to justify a breach of the Code of Professional Responsibility.

In Pennsylvania, the Canons of the Code of Professional Responsibility have the force of statutory rules of conduct for attorneys. *Slater v. Rimar, Inc.*, 462 Pa. 138, 338 A.2d 584 (1975); *Schofield Discipline Case*, 362 Pa. 201, 66 A.2d 675 (1949). The trial court in the first instance has the power to regulate the conduct of attorneys practicing before it, and has the duty to insure that those attorneys act in accordance with the Code of Professional Responsibility. No specific rule of court governs the timeliness of a motion to disqualify based on alleged ethical violations of the challenged attorney. The court's responsibility cannot be defeated by the laches of the party seeking disqualification, at least where the motion to disqualify is made prior to the commencement of trial. *Emle Industries Inc., v. Patentex, Inc.*, 478 F.2d 562 (2d Cir. 1973). We will therefore address the merits of City's motion.

In support of their position Brown and his firm argue that Canon 4 of the Code of Professional Responsibility—"A *Lawyer* Should Preserve the Confidences and Secrets of a *Client.*" (Emphasis added)—applies only where there is an attorney-client relationship, and is, therefore, inapplicable here because Bracken's relationship to Port Corporation is not one of attorney-client. Similarly, Brown and his firm argue that Canon 5 of the Code of Professional Responsibility—"A *Lawyer* Should Exercise Independent Professional Judgment on Behalf of a *Client* " (emphasis added)—applies only in an attorney-client relationship and has not been breached here because neither Port Corporation nor City have ever been Bracken's client. Lastly, Brown and his firm contend that an alleged breach of Canon 9—"A Lawyer Should Avoid Even the Appearance of Professional Impropriety"—must be judged within the context of specific ethical or disciplinary rules, none of which, it is argued, have been violated by Brown, Bracken, or their firm.

We begin our consideration of these arguments with a recognition of several important competing interests at

stake in a situation such as that presented by this appeal: (1) a party's interest in freely selecting counsel of its choice; *Slater v. Rimar, supra,* 462 Pa. 138, 338 A.2d 584 (1975); (2) a party's interest in a trial free from the risk of even inadvertent disclosures of confidential information (Code of Professional Responsibility, Canon 4); (3) the rights of all clients to have their attorneys act in their respective best interests and to exercise independent professional judgment on their behalf (Code of Professional Responsibility, Canon 5); and (4) the public's interest in the scrupulously ethical administration of justice (Code of Professional Responsibility, Canon 9). *Woods v. Covington County Bank,* 537 F.2d 804 (5th Cir. 1976); *See also, Hull v. Celanese Corporation et al.,* 513 F.2d 568 (2d Cir. 1975).

Furthermore "[w]here a breach of ethics is made to appear, the relief is usually the granting of a motion to disqualify and remove the offending attorney." *Slater v. Rimar, Inc., supra,* 462 Pa. at 149, 338 A.2d at 589; *See also Kramer v. Scientific Control Corp.,* 534 F.2d 1085 (3d Cir. 1976) ("'A court may disqualify an attorney for not only acting improperly but also for failing to avoid the appearance of impropriety.' *Richardson v. Hamilton International Corp.,* 469 F.2d 1382, 1385–86 & n. 12 (3d Cir. 1972), *cert. denied,* 411 U.S. 986, 93 S.Ct. 2271, 36 L.Ed.2d 964 (1973)").

We also note our agreement with the conclusion of the Third Circuit Court of Appeals in *Kramer v. Scientific Control, Corp.,* 534 F.2d 1085 (3d Cir. 1976), that when one attorney is prohibited by ethical considerations from undertaking to represent a certain client, all members of the firm to which that attorney belongs are also prohibited from serving as counsel to that client.

Brown and his firm overlook several important considerations when contending that the actions of Brown and Bracken did not constitute a violation of Canons 4 or 5 of the Code. Initially, we note that the record indicates that Bracken was one of the original incorporators of Port Corporation, and that Morgan, Lewis and Bockius acted as counsel

in the incorporation. Furthermore, from Port Corporation's creation to the present, Bracken has been a member of Port Corporation's Board of Directors, its twelve member Executive Committee, and, until June 30, 1976, was Port Corporation's Senior Vice President. We also note that Port Corporation is a non-profit corporation, and that the Non-Profit Corporation Law of 1972, 15 Pa.C.S. § 7734 (Supp.1978) provides that officers and directors of non-profit corporations shall be deemed to stand in a fiduciary relationship to the corporation. Bracken's position as Board member, executive committee member, and senior vice-president certainly imposed upon him a position of trust similar to that contemplated in an attorney-client relationship by Canon 4. Because of this fiduciary relationship with Port Corporation, Bracken himself could not ethically have represented American or Arundel. Canon 4's admonition that a lawyer should preserve the confidences and secrets of a client is founded in part at least on the fiduciary duty existing between a lawyer and a client. See, Code of Professional Responsibility, Ethical Consideration 4–1.

Even if we conclude that the attorney-client relationship that once existed between Morgan, Lewis and Bockius and Port Corporation had terminated, the lack of a technical attorney-client relationship between Bracken and Port Corporation is not fatal to City's motion to disqualify. In *Hull v. Celanese Corporation et al., supra,* 513 F.2d 568 (2d Cir. 1975), the court upheld the disqualification of plaintiff's counsel even though counsel had never represented the defendant. Similarly, the court in *Kramer v. Scientific Control Corp., supra,* 534 F.2d 1085 (3d Cir. 1976), reversed the trial court's dismissal of defendant's motion to disqualify plaintiff's counsel where plaintiff was a class represented by the law partner of one of the individual class plaintiffs, even though no attorney-client relationship had ever existed between the challenged attorney and defendant. Most recently, in *Fund of Funds Limited, et al. v. Arthur Andersen & Co., et al.,* 567 F.2d 225 (2d Cir. 1977), the court granted a motion to disqualify, holding that the challenged law firm

was in a position to receive the confidences of the parties seeking disqualification despite the lack of any present, or past, attorney-client relationship between the moving parties and the law firm sought to be disqualified. See also, Rule 203 of our Rules of Disciplinary Enforcement, which provides that

"[a]cts or omissions by a person subject to these rules, individually or in concert with any other person or persons which violate the Disciplinary Rules, shall constitute misconduct and shall be grounds for discipline, *whether or not the act or omission occurred in the course of an attorney-client relationship*." (emphasis added).

We also reject the argument put forth by Brown and his firm that Brown's representation of Arundel and American is not barred by Canon 5 of the Code. Ethical Consideration 5–14 provides, among other things, that maintenance of the independence of professional judgment required of a lawyer precludes the acceptance or continuation of employment that will adversely affect the lawyer's judgment on behalf of a client or dilute the lawyer's loyalty to a client. Ethical Consideration 5–15 states, that all doubts should be resolved against the propriety of such representation.

Clearly, the interests of both City and its agent Port Corporation are adverse to those of Arundel and American. Had Bracken accepted employment as counsel to Arundel and co-counsel to American while still in the employ of Port Corporation, his violation of the spirit, if not the letter, of Canon 5 would be apparent. Bracken is a long-time official of Port Corporation, an agency of defendant City, and a powerful influence on that Corporation. As an officer and member of the board of Port Corporation during the period of time in which the incidents forming the basis of American's suit occurred, it is likely that he had substantial influence on Port Corporation's action during that period. As such, Bracken's interest in the outcome of the litigation is adverse to American's. Nevertheless, American is represented by Bracken's law partner. We believe that under the facts of this case, Canon 5 bars Brown, as well as Bracken, from representing Arundel and American.

Even if disqualification was not required by Canons 4 and 5, Canon 9's admonition that "[a] Lawyer Should Avoid Even the Appearance of Professional Impropriety", and D.R. 9–101(B)'s prohibition of acceptance of private employment in any matter in which an attorney had substantial responsibility while a public employee, require disqualification here.

As instructed by Ethical Consideration 9–2, "[w]hen explicit ethical guidance does not exist, a lawyer should determine his conduct by acting in a manner that promotes public confidence in the integrity and efficiency of the legal system and the legal profession." Public confidence in the integrity of the legal profession can hardly be promoted when a partner in a well-known law firm in Philadelphia represents a party seeking to sue the City of Philadelphia for damages claimed to exceed five million dollars and claimed to be owed plaintiff because of the actions taken by the City's agency at a time when another partner in the same law firm sat on the Board of Directors and Executive Committee of the City's agency and served as Senior Vice President of that agency.

The record is silent as to whether Bracken would profit financially from legal fees paid by plaintiff. Even if we assume that he would not, the appearance of impropriety remains. As noted in *Kramer v. Scientific Control Corp.*, 534 F.2d 1085 (3d Cir. 1976), lay persons generally understand a legal partnership to include a sharing of profits and losses.

> "Esoteric internal protections in writing or under oath, insulating the plaintiff-attorney partner from participating in a fee, can hardly dissipate the lay notion that action by one partner is action for the partnership."
> *Id.* at 1092.

In addition, Ethical Consideration 9–3 admonishes that a lawyer who leaves public employment ". . . should not accept employment in connection with any matter in which he had substantial responsibility prior to his leaving, since to accept employment would give the appearance of impropriety even if none exists." More specifically, Disciplinary Rule 9–101(B) prohibits an attorney from accepting private em-

ployment in a matter over which he or she exercised substantial responsibility while publicly employed, regardless of whether or not the lawyer's public employment was in the capacity of an attorney. Bracken was clearly publicly employed by virtue of his various positions with Port Corporation. Despite that employment, and despite the prohibition of D.R. 9–101(B), Bracken's firm accepted private employment as plaintiff's co-counsel in a suit filed against the very public agency which employed Bracken. The fact that D.R. 9–101(B) contemplates situations in which the attorney was *formerly* a public employee makes its prohibition doubly applicable to attorneys who are *currently* also public employees.

The fact of Bracken's current employment also implicates D.R. 5–101(B). D.R. 5–101(B) provides, with certain exceptions not relevant here, that

"A lawyer shall not accept employment in contemplated or pending litigation if he knows or it is obvious that he or a lawyer in his firm ought to be called as a witness, . . ."

Certainly, the trial in this case will deal primarily with an examination of the propriety of the actions taken by Port Corporation during the period involved—actions authorized at least in part by Bracken. Thus, it is possible that because of his knowledge of Port Corporation's operations during the period of time when American allegedly suffered the losses for which damages against the City are now claimed, Bracken could be called as a witness in American's suit against City.

For these reasons we are compelled to conclude that Brown, and his law firm Morgan, Lewis and Bockius are barred by Canons 4, 5, and 9 of the Code of Professional Responsibility from further representation of Arundel or American in these matters.

The order of the Superior Court, affirming the trial court's dismissal of City's motion to disqualify Richard P. Brown, Jr., and the law firm of Morgan, Lewis and Bockius,

is reversed, and Richard P. Brown, Jr., and Morgan, Lewis and Bockius are ordered disqualified.

ROBERTS, J., filed a dissenting opinion.

POMEROY, J., did not participate in the consideration or decision of this case.

PACKEL, former J., did not participate in the decision of this case.

ROBERTS, Justice, dissenting.

I agree with the majority that motions to disqualify attorneys may raise serious ethical questions and that the legal profession's adherence to the Code of Professional Responsibility is vital to the public's interest in the scrupulous administration of justice. Nonetheless, I am compelled to dissent because I believe the majority improperly reaches the merits of the City of Philadelphia's motion to disqualify. As both the trial court and the unanimous Superior Court recognized, the controlling question here is whether the City of Philadelphia, aware of the challenged attorney's participation in this case for at least 22 months before filing its motion to disqualify, can on the eve of trial complain of that attorney's continued participation; or whether the City may be excused for its delay because it retained new special counsel little more than two months before filing this motion. Because both questions must be answered in the negative, I would affirm the unanimous order of the Superior Court affirming the order of the trial court denying as untimely the City's oral motion to disqualify.

The litigation out of which this appeal arises began over six years ago in March, 1972, when American Dredging Company (American), general contractor for the Tioga Marine Terminal Site Development, instituted an action in assumpsit against the City of Philadelphia on its own behalf and on behalf of its primary subcontractor, the Arundel Corporation. Port Corporation, a non-profit organization to which the City delegated management, design and supervi-

sion of the Tioga Terminal construction, is not a party to the action commenced by American against the City, despite the City's attempt to join it as a co-defendant. Richard P. Brown, Jr., Esquire, a partner in the firm of Morgan, Lewis and Bockius and the challenged attorney in this appeal, entered his appearance as co-counsel for American on December 2, 1975. From commencement of suit in March, 1972, until Otis W. Erisman entered his appearance as special counsel to the City on September 9, 1976, the City was represented in this litigation by the City Solicitor's office. While numerous other actions were instituted as a result of this original suit, it is important only to note that Port Corporation has never been a party to American's action against the City, the action in which this appeal was taken, and neither Mr. Erisman nor the City Solicitor's office has ever represented Port Corporation in any of the suits.

At a pre-trial conference the day trial was to begin, the City, through special counsel Mr. Erisman, moved to disqualify Richard P. Brown, Jr. and Morgan, Lewis and Bockius from participation in the American Dredging case. The City alleged it had the previous evening discovered a memorandum dated February 24, 1967, which had been in Port Corporation's files from the outset of the litigation in 1972. The basis of the motion to disqualify was that Mr. Bracken, a partner in Morgan, Lewis and Bockius, was a member of the Executive Committee of Port Corporation and supposedly had access to confidential information of the Corporation.

American opposed the City's motion on several grounds, including: 1) the motion was untimely filed on the day before trial without either a satisfactory explanation for the delay or a demonstration of any prejudice to the City sufficient to offset the prejudice to American from continued representation; 2) even if Port Corporation enjoyed some attorney-client privilege with Bracken, the City was not a party to that relationship; and 3) Port Corporation

was not a party to, nor could it be affected by a judgment in, the instant litigation.*

The trial court denied the City's motion as untimely. The parties agree that a party must file a motion to disqualify counsel with reasonable promptness and diligence after learning the relevant facts. *Marco v. Dulles*, 169 F.Supp. 622, 623 (S.D.N.Y. 1959). The facts indicate that: 1) the City Solicitor, both in December, 1975, when Mr. Brown entered his appearance in the case, and throughout the pendency of this litigation, was a director of Port Corporation and a member of Port Corporation's Executive Committee, and therefore knew of the legal positions of Mr. Brown's partner, Mr. Bracken; 2) the City Solicitor's office never raised any objection to Mr. Brown's representation; and 3) the memorandum containing the facts upon which the city based its motion was dated February 24, 1967, was in Port Corporation's files from the date of its writing to the time the motion was filed nine years later, and was made available to the city during discovery.

Control of an attorney's conduct in trial litigation is ordinarily within the discretionary supervisory powers of the trial court. *Redd v. Shell Oil Company*, 518 F.2d 311 (10th Cir. 1975); accord, *Slater v. Rimar, Inc.*, 462 Pa. 138, 338 A.2d 584 (1975). The court here, in its discretion, determined that the facts did not warrant interference, at this late date, with the main litigation:

"This complex and protracted litigation commenced almost five years ago. On June 29, 1976, after a conference with all counsel, this Court entered a pre-trial Order fixing a discovery deadline of October 22, 1976, and scheduling trial for November 15, 1976. The trial date was subsequently changed to November 22, 1976.

"Despite the opportunity for discovery and other pretrial preparations since the entry of appearance by Mr.

---

* Because I believe the trial court properly denied the motion as untimely, I need express no opinion as to whether, even assuming that Port Corporation should be treated as a client of Mr. Bracken, the City has standing to protest Mr. Brown's representation of American.

Brown in December of 1975, counsel for the City, *on the day trial was to begin,* for the first time raised the issue of a possible conflict by the instant oral motion to disqualify. As previously stated, the date for trial of this matter had been set for many months. It was estimated that eight weeks would be necessary to complete the trial, and arrangements had already been made for the calling of the many witnesses who were to testify. In light of all the attendant circumstances, it was the decision of this Court to reject the present motion as untimely made.

"We recognized that new counsel for the City had been designated as such only a few months prior thereto, and that his task of reviewing the thousands of pages of documents and correspondence relevant to this litigation was by no means an easy one. This, however, was the City's choice, and its decision to engage new counsel three months before a scheduled trial date and about eleven months after Mr. Brown was in the case furnished no valid basis for not moving to disqualify said counsel until the date previously established for trial. This is especially true where all of the information relied upon by the City is now and has been part of its own records since prior to the initiation of these proceedings.

"Counsel for the City contends that the document upon which it founds its motion for disqualification was not discovered until November 21, 1976, one day before the scheduled commencement of trial. That document is dated February 24, 1967, and presumably has been in the City's file for at least a period of several years. It comes with ill grace for counsel to now appear before the Court and contend that, since both present and past counsel for the City did not examine or did not grasp the significance of this document in their prior reviews of the case, counsel who has been in the case for about eleven months, participating in pre-trial preparation and discovery and concededly vital to Plaintiff, should now be disqualified.

"It has always been this Court's intention to accommodate counsel in connection with any differences that may

arise in the course of a litigation, so long as the request is reasonable and the interests of other parties are not prejudiced thereby. For the preceding reasons, we believe these criteria have not been met, and consequently the City's oral motion should not be entertained."

Given the facts of this case and the controlling principle that a motion to disqualify must be promptly filed, I cannot agree with the majority that the trial court abused its discretion by denying the City's motion to disqualify and proceeding with this already protracted and complex litigation. The public's interest in the integrity of the legal profession may still be protected for the ethical questions raised may, if necessary, be dealt with in a separate proceeding which does not interfere with the trial itself.

In a similar case, the Court of Appeals for the Tenth Circuit reached the same conclusion. In *Redd v. Shell Oil Co.*, supra, the court considered an appeal from disciplinary proceedings in which the trial court imposed sanctions upon an attorney for his sponsorship of a motion to disqualify opposing counsel which the court had denied. After extensive pre-trial activity in *Redd*, trial was scheduled to commence on Monday, July 15, 1974. On Friday, July 12, 1974, plaintiff filed its final pre-trial memorandum. Defendant filed a motion to disqualify plaintiff's attorney on that same day, based upon supposed breaches of Canons 4 and 9 of the Code of Professional Responsibility purportedly revealed by facts set forth in plaintiff's pre-trial memorandum. Although the court of appeals noted "there were indications at least of the existence of a conflict," id. at 315, it did not analyze the merits of the motion, but affirmed the denial of the motion solely on the basis of its untimely presentation. The court stated:

"[I]f [defendant] had filed the motion some months prior to the date of the trial it would have merited serious attention and consideration. Why he postponed the filing until the Friday before the Monday on which the trial was to commence is inadequately explained. He maintains that it was because the proposed pre-trial order signaled

the use of information [acquired by an associate during his former employment]. We can only say that this assertion is farfetched. It seems more likely that the motion was held in reserve until the most expedient time came along to file it. From the date that [the associate] commenced work with the . . . law firm [representing plaintiff] in early February, 1974, the fact of his employment was known and the motion could have been filed at that time."

Id. at 315 (footnote omitted).

Like the Fifth Circuit Court of Appeals, I recognize the trial court's proper exercise of its discretion to uphold the integrity of the trial process by ensuring that trial be conducted as promptly and efficiently as possible. Accordingly, I would affirm the unanimous order of the Superior Court affirming the order of the trial court denying the City's oral motion to disqualify Mr. Brown.