425 A.2d 359

Paul SILVER, Supervisor of the Township of Buckingham,

and

Donald W. Parker, Supervisor of the Township of Buckingham, Petitioners,

v.

David A. DOWNS, Supervisor, William H. Yerkes, III, Former Supervisor, Duncan E. Beaton, Former Auditor, Edward L. Reim, Former Supervisor, W. Earl Rockafellow, Former Supervisor, Julian P. Perry, Former Supervisor and others

and

The Honorable Isaac S. Garb, Judge of Court of Common Pleas of Bucks County, Respondents.

Supreme Court of Pennsylvania.

Argued Sept. 30, 1980.

Decided Jan. 30, 1981.

Peter Hearn, Sally Akan, Joseph J. Serritella, Lynne E. Delanty, Pepper, Hamilton & Scheetz, Philadelphia, for petitioners.

Donald B. McCoy, Newtown, for respondents.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION

KAUFFMAN, Justice.

Before us is a petition for review of an order of the Court of Common Pleas of Bucks County disqualifying the solicitor of Buckingham Township from representing petitioners, two township supervisors who are defendants in a recall action brought under Section 503 of the Second Class Township Code, 53 P.S. § 65503 ("Section 503").[1] Respondents are the

1. § 65503. Penalty for failure to perform duties

    If any township officer refuses or neglects to perform his duties, the court of quarter sessions, upon complaint in writing by five percentum of the registered electors of the township, may issue a rule upon such officer to show cause why his office should not be declared vacant and another appointed in his stead. Such rule shall

named plaintiffs in the recall action and the trial judge from whose order review is now sought. Respondent David A. Downs ("Downs") is, like petitioners Paul Silver ("Silver") and Donald W. Parker ("Parker"), a sitting supervisor on the current three-person Board of Supervisors of Buckingham Township ("Board").

The recall complaint, filed on February 4, 1980, questions a variety of governmental actions taken by Silver and Parker in their official capacities, primarily focusing on the handling of township accounts and spending. No allegation has been made, however, of fraud, embezzlement, or other criminal conduct. The township solicitor undertook to defend Silver and Parker in accordance with her understanding of Section 582 of the Second Class Township Code, 53 P.S. § 65582 ("Section 582"), which provides in pertinent part:

> The township solicitor, when directed or requested so to do, shall . . . *defend* all actions or suits against the township, *or any officer thereof,* wherein or whereby any of the estates, *rights,* privileges, trusts, ordinances, or *accounts,* of the township, may be brought in question before any court in the Commonwealth . . . (Emphasis supplied)

Approximately one week after the recall complaint was filed, Downs made a written request to the township solicitor for legal advice on matters directly pertaining to the questions of township governance raised in the complaint. Noting Downs' role as lead plaintiff in the recall action in which she represented the defendants, the solicitor sought instructions from the Board on whether she should respond to his inquiry.

be made returnable not less than two weeks from its date of issue. Upon hearing, and proof that the facts alleged in the complaint are true, the court may declare the office vacant and appoint another in his stead, to hold office during the term of the officer deposed, or to make such other order as to the court may seem just and proper. Act of May 1, 1933, P.L. 103, art. V, § 503; *as amended,* July 10, 1947, P.L. 1481, § 5.

On the same day that the solicitor's request was transmitted to the Board, respondents filed a motion to disqualify the solicitor and her law firm from representing petitioners in the recall action, alleging a conflict based upon her prior attorney-client relationship to Downs in his official capacity as a township supervisor, and alleging that her representation of Silver and Parker in the recall action would deprive Downs of her counsel in Board matters. When petitioners sought to depose Downs in an effort to establish a factual record to challenge these allegations, Downs refused to appear. After several unsuccessful attempts to reschedule his deposition, petitioners moved for an order to compel Downs to appear. Respondents' counsel, in turn, sought and obtained a Rule to Show Cause why a protective order should not be issued, returnable May 27, 1980.

On the return date, a hearing was held on the discovery motions, and, despite petitioners' objection that no evidentiary record yet had been made, arguments also were heard on the merits of the disqualification motion. Without ruling on either petitioners' motion to compel discovery or respondents' motion for a protective order, and without explanation, the trial judge entered an order disqualifying the solicitor and her law firm from representing petitioners in the recall action.

Petitioners thereafter requested that the trial judge: (1) withdraw his order pending a determination of the propriety of using public funds to retain other counsel, or (2) certify his order for interlocutory appeal to this Court, or (3) stay proceedings in the recall action pending any review petitioners might seek in this Court. These requests were rejected, again without opinion, on July 3, 1980. The petition now before us was filed on August 4, 1980, and an application for stay was filed on August 13, 1980. The following day this writer entered an order staying all proceedings, directing the trial court to file an opinion setting forth the basis for its orders of May 27 and July 3, and scheduling the matter for oral argument.

## I

■ Respondents contend initially that since the trial court refused to certify the question of disqualification for interlocutory appeal, this Court lacks jurisdiction to consider the present petition. We disagree. Under Rule 1311 of the Pennsylvania Rules of Appellate Procedure, adopted pursuant to Section 702(c) of the Judicial Code (42 Pa.C.S.A. § 702(b)), interlocutory appeals may be taken by permission of an appellate court upon the lower court's certification of its order.[2] In the event certification is refused, however, the explanatory note to Rule 1311 provides:

> Where the . . . lower court refuses to amend its order to include the [certification] statement, a petition for review under Chapter 15 of the unappealable order of denial is the proper mode of determining whether the case is so egregious as to justify prerogative appellate correction of the exercise of discretion by the lower tribunal. If the petition for review is granted in such a case, the effect (as in the federal practice under 28 U.S.C. § 1292(b)) is the same as if a petition for permission to appeal had been filed and granted, and no separate petition for permission to appeal need be filed.[3]

We conclude that the circumstances of this case warrant prerogative appellate correction of the trial court's orders. Moreover, we believe that the controversial question of

**2.** 42 Pa.C.S.A. 702(b) provides:

*Interlocutory appeals by permission.* When a court or other government unit, in making an interlocutory order in a matter in which its final order would be within the jurisdiction of an appellate court, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the matter, it shall so state in such order. The appellate court may thereupon, in its discretion, permit an appeal to be taken from such interlocutory order.

Rule 1311 sets forth the filing procedure for such appeals.

**3.** Chapter 15 of the Pennsylvania Rules of Appellate Procedure sets forth the procedures for filing petitions for review, and consolidates a variety of traditional appellate procedures (e. g. mandamus, quo warranto, etc.), among which the present petition would lie, into the petition for review.

whether petitioners shall be represented by the township solicitor or other counsel retained with public funds is not only critical to the outcome of this case, but is an issue of immediate public importance affecting operation of government throughout the Commonwealth. We thus assume plenary jurisdiction over the petition for review under Section 726 of the Judicial Code (42 Pa.C.S.A. § 726).[4]

Justice and fairness require immediate correction of the trial court's orders because: (1) disqualification of counsel and refusal to provide alternatively for the use of public funds to retain substitute counsel has rendered petitioners effectively defenseless in the recall action,[5] and (2) duly elected public officials have been exposed to the Hobson's choice of committing substantial amounts of their own funds to defend official acts, even though not accused of personal wrongdoing, or resigning.

Few public servants, however dedicated, would risk substantial personal resources to defend their official acts when they have been accused of no personal wrongdoing. But if petitioners were to resign without contest, the public would be deprived of its right to have this controversy properly litigated and justly decided on the merits. A mere five percent of the electorate could nullify the will of the majority, forcing duly elected officials out of office simply by filing complex litigation impossible to defend without substantial personal financial risk. This would virtually invite abuse of Section 503 by political opponents to achieve indirectly that which they have been unable to accomplish directly at the polls, thereby frustrating the will of the

4. Section 726 provides:
Extraordinary jurisdiction
Notwithstanding any other provision of law, the Supreme Court may, on its own motion or upon petition of any party, in any matter pending before any court or district justice of this Commonwealth involving an issue of immediate public importance, assume plenary jurisdiction of such matter at any stage thereof and enter a final order or otherwise cause right and justice to be done.

5. Petitioners, men of modest means, currently serve as township supervisors without pay, having decided to forego even their token salaries of $25 per meeting as an economy measure.

electorate. Assumption of jurisdiction here is thus ultimately predicated on the threat posed to the democratic process itself if the maneuvering sanctioned by the decision below were permitted to stand.

## II

Respondents contend that the township would not benefit from the defense of petitioners' right to hold office since the recall complaint has been brought by citizens acting allegedly on the township's behalf rather than by outside parties adverse to township interests. Respondents thus argue that the recall action is personal in nature, and therefore the township solicitor is not obliged to defend it as part of her duties under Section 582. It follows, they assert, that to provide substitute legal counsel to petitioners at public expense would be inappropriate.[6]

■ We refuse, however, to adopt respondents' view of the nature of the recall action, nor can we accept so narrow an interpretation of the solicitor's duties under Section 582. Under that statute, petitioners, as *"officers of the township,"* expressly are entitled to publicly provided counsel to *"defend"* their official actions affecting township *"rights"* and *"accounts."* [7] As we previously have indicated, if peti-

6. Although respondents addressed this issue in their disqualification motion and also sought, unsuccessfully, a preliminary injunction barring the use of township funds in defense of the recall action, the issue was left unresolved at the time of the disqualification order. Respondents, having successfully alleged a conflict in the solicitor's duties, instead threatened petitioners with personal liability in the event they might attempt to retain substitute counsel with township funds. The trial court, as noted earlier, refused to rule on the issue of substitute counsel when requested to do so by petitioners. Clearly, however, this is a more basic question than is the matter of disqualification, for if the defense of the recall action falls within the scope of the solicitor's duties under Section 582, then *a fortiori,* if the solicitor is disqualified, substitute counsel must be provided; while if such representation is outside the scope of the solicitor's duties, the motion to disqualify is superfluous. For this reason, we consider the question of petitioners' right to public representation before proceeding to the merits of the disqualification order.

7. The allegations in the complaint specifically call into question township "rights" and "accounts." One allegation, for example,

tioners are deprived of representation by counsel at public expense, there is a significant risk that there will be no meaningful adjudication of the merits of the recall action. The township's and the public's overriding interest in the fair and complete resolution of the questions raised by the recall complaint is more than sufficient to require the solicitor's representation pursuant to Section 582.

Moreover, we do not believe that the Legislature, in promulgating Section 503, intended to deprive elected representatives of a right to legal counsel to which they otherwise would be entitled in the ordinary course of their official activities. Whether or not the allegations in the recall complaint have merit, it is unquestionable that the challenged conduct was undertaken in petitioners' official capacities.[8] That this litigation has been labeled a recall action does not automatically subject the targeted officials to potentially crippling personal financial liability should they seek to defend their good faith official conduct.

■ Nor do we believe that designating petitioners' defense of the recall action as a "personal" undertaking would benefit the taxpayers of Buckingham Township. The cost of legal counsel is but one of a multitude of expenses which the township must incur in connection with the institution of recall proceedings. Section 503 provides a means by which township electorates can, in theory, call into question previous electoral decisions.[9] In view of the unquestionable importance of proper and thorough adjudication of the merits in such actions, legal costs, like any other associated ex-

accuses the defendants of spending township funds in a lobbying effort on behalf of a legislative amendment to the Municipalities Planning Code, "in the absence of statutory authority" to do so. Numerous other paragraphs challenge the procedures by which sums of money were transferred from one township account to another.

8. We emphasize that this matter does not involve a charge of criminal misconduct, which by its very nature could not be performed in any official capacity.

9. Petitioners challenged the constitutionality of Section 503 in their preliminary objections below. That issue, however, is not now before us.

penses, are merely part of the price which must be paid for permitting the implementation of an extraordinary part of the democratic process. In the event the solicitor is ultimately disqualified, petitioners must therefore be free to choose substitute counsel without fear of personal liability for legal fees.

### III

With regard to the issue of disqualification, the lower court's order properly focused solely on the problems of potential conflict underlying the township solicitor's defense of two supervisors in a recall action where a third supervisor is a plaintiff. Whether township funds should be expended at all in defense of public officials who are sued by private citizens on behalf of the township is, as the format of this Opinion indicates, entirely distinct from the question of conflict in the solicitor's duties.

The lower court based its decision on guidelines articulated in *American Dredging Co. v. City of Philadelphia*, 480 Pa. 177, 389 A.2d 568, in which various Canons of the Code of Professional Responsibility were applied to the issue of attorney disqualification. Specifically, the court found controlling the following interests, as expressed in *American Dredging*:

> . . . (3) the rights of all clients to have their attorneys act in their respective best interests and to exercise independent professional judgment on their behalf (Code of Professional Responsibility, Canon 5); and

> (4) the public's interest in the scrupulously ethical administration of justice (Code of Professional Responsibility, Canon 9).

480 Pa. at 184, 389 A.2d at 572. We agree with the trial court that these considerations are pertinent to the matter before us and should not be compromised under any circumstances. We cannot accept the premise, however, that the mere possibility that one of the ethical canons may be transgressed at some indeterminate point in litigation is

sufficient to trigger, without discovery or an evidentiary hearing, the extreme remedy of disqualification. The federal courts have clearly indicated, in reference to application of Canons 5 and 9 in disqualification matters, that "when dealing with ethical principles . . . we cannot paint with broad strokes." *Fund of Funds, Ltd. v. Arthur Andersen & Co.*, 567 F.2d 225 (2nd Cir. 1977). While we agree with the trial court that, in light of our decision in *American Dredging, supra*, the "appearance of impropriety" may well be sufficient to justify disqualification of counsel, we are not convinced that an appearance of impropriety has yet been shown here. And although we must be concerned about the probability of conflict, and need not wait for it to ripen into a certainty, *Pirillo v. Takiff*, 462 Pa. 511, 529, 341 A.2d 896, 905 (1975), we have no way of properly evaluating the potential for conflict here in the absence of an evidentiary record.[10]

The lower court's opinion is replete with phrases confirming the insufficient evidentiary basis for its conclusions. It notes, for example, that it was "not inconceivable" that the township solicitor *might* be called as a witness in the recall proceedings (slip. opinion, p. 3), while conceding that "we [the court] . . . have no way of knowing at this time" whether such action would be warranted by the circumstances of the case. (Id.) Definitive clarification of this and other questions pertinent to disqualification was the express purpose of the discovery sought by petitioners. By ignoring the discovery motions, proceeding to disqualify the township solicitor without a factual record and then seeking to justify this extreme action with vague surmises about the possibility of ethical conflict, the trial court rendered its order

**10.** It is particularly objectionable to disqualify counsel so readily when, as here, a substantial hardship may be worked upon the affected party in litigation. *See, J. P. Foley & Co., Inc. v. Vanderbilt*, 523 F.2d 1357 (2nd Cir. 1975) and Disciplinary Rule 5–101(B)(4) of the *Code of Professional Responsibility*. We note also that significant weight must be given to the right of a party to be represented by counsel of his choice. *See, Slater v. Rimar*, 462 Pa. 138, 149–50, 338 A.2d 584, 590 (1975).

unsupportable. If the trial court had not barred discovery, it would not have had to base its ruling upon conjecture.[11]

■ Nor does the solicitor's obligation to defend *all* the supervisors in actions arising out of their official conduct necessarily create a conflict, despite the trial court's suggestion to the contrary. It is indeed the case, as noted by the court below, that "by virtue of the status of these three separate individuals, each has a right to look to the township solicitor for representation" (slip opinion p. 5), but such representation occurs on behalf of the supervisors in their *official capacities only*. It is patently clear that Downs' participation as a plaintiff in the recall action is *not* in his official capacity and cannot by itself nullify the solicitor's duty to *defend* the other members of the Board. If the solicitor's defense of Silver and Parker would not affect her ability to counsel Downs in official matters unrelated to the recall action, the extreme action of disqualification might be wholly unnecessary.[12]

In their memorandum of law in support of the motion to disqualify counsel, respondents asserted that the solicitor's representation of petitioners had resulted in the disclosure of "client confidences" shared by Downs with the solicitor, and contended that such representation would impair her ability to provide counsel to Downs in his capacity as a supervisor. These are factual assertions, however, to which discovery sought by petitioners would have been addressed.

11. Even if the solicitor does have personal knowledge of facts which might ordinarily warrant her being called as a witness, disqualification should be avoided if, for example, her testimony is likely to be unnecessary because it would be cumulative, *Miller Electric Construction, Inc. v. Devine Lighting Co., Inc.*, 421 F.Supp. 1020, 1023–24 (W.D.Pa.1976), or uncontested, *Nakasian v. Incontrade, Inc.*, 78 F.R.D. 229, 232 (S.D.N.Y.1978). Discovery is indispensable to a determination of these factors. We also note that a party may not call opposing counsel as a witness for the sole purpose of laying a foundation for a motion to disqualify. *See, Kroungold v. Triester*, 521 F.2d 763 (3d Cir. 1975); Official Comment to Disciplinary Rule 5–102(B) of the Code of Professional Responsibility.

12. We do not preclude the possibility that, after discovery is completed on remand, disqualification may, in fact, be appropriate.

By deciding the matter with no evidentiary basis, the trial court effectively presumed that the facts were as contended by respondents.

Finally, the lower court opinion refers to Downs' letter requesting the solicitor's advice on legal matters relating directly to the recall action. The opinion recognizes the curious timing of this correspondence in view of Downs' role as lead plaintiff in the recall action commenced several weeks earlier, and notes petitioners' assertion that the letter was nothing more than a litigation tactic to generate an apparent conflict requiring the solicitor's removal from the case, leaving petitioners effectively defenseless. Although the court notes that "it is far from obvious on the face of the letter requesting an opinion that this [petitioners' assertion] is so" (slip opinion p. 6), no explanation is offered as to why discovery was not permitted to proceed in an effort to clarify the circumstances surrounding Downs' letter.

Moreover, in petitioners' motion for withdrawal of the May 27 order (denied in the July 3 order), it was alleged that respondents' counsel had publicly stated in the press, after entry of the first order, that he would not have objected to the solicitor's representation of Silver and Parker if the two supervisors had assumed responsibility for paying the legal costs, and that he asked for the disqualification only after Silver and Parker made it clear that they intended to have the township pay for their defense. This allegation raises additional questions about the nature of respondents' claim of conflict in the solicitor's duties, and further emphasizes the importance of investigating the manner in which Downs' letter was used to substantiate that claim. At the very least, petitioners should have been afforded the opportunity to pursue this alleged statement through the discovery process.

Accordingly, we vacate the May 27 and the July 3 orders, and remand for discovery and further proceedings consistent with this opinion.

ROBERTS, J., filed a dissenting opinion.

ROBERTS, Justice, dissenting.

A township solicitor does not operate a Legal Aid Society for the benefit of township officials. Rather, by statute, a township solicitor may represent a township official only "wherein or whereby any of the estates, rights, privileges, trusts, ordinances, or accounts, of the township, may be brought in question before any court in the Commonwealth. . . ." Second Class Township Code, Act of May 1, 1933, P.L. 103, § 582, as amended, 53 P.S. § 65582 (1957). Despite this clear legislative judgment on the scope of a solicitor's authority, the majority concludes that a township solicitor can successfully resist a motion seeking to disqualify her from representing two township supervisors who are the subject of a valid, statutorily authorized removal proceeding. The Second Class Township Code is clear that the township solicitor, herself a township official, is without authority to represent the township officials in their personal capacities. I must dissent.

The present removal complaint, bearing the signatures of more than twenty-five percent of the citizens of Buckingham Township and an even greater share of the electorate, contains allegations that petitioners, two Buckingham Township Supervisors, have engaged in numerous wrongful acts. The complainants seek to remove petitioners from office because each of the two supervisors allegedly "refuses or neglects to perform his duties. . . ." Second Class Township Code, § 503, as amended, 53 P.S. § 65503. These allegations are serious, indeed. "[W]hen these duties are not performed, mismanagement of the township affairs is the usual corollary and fraud and corruption are thereby facilitated." *Crane's Appeal*, 344 Pa. 624, 627, 26 A.2d 457, 459 (1942).

The majority is incorrect in concluding that "interests" of the township are at issue. The present removal complaint does not call into question any accounts or other interests of the township. Rather, a reading of the removal complaint makes clear that the present proceeding is against township supervisors in their personal capacity. It is settled that "a

municipal corporation has no . . . interest in a suit exclusively directed against its officers, charging lack of legal qualifications to hold office and gross malfeasance in office. . . . " 10 McQuillin on Municipal Corporations § 29.14 at 211–12 (3d ed. 1950). This is precisely the gravamen of the removal proceeding. On no basis, therefore, can it be concluded, as the majority concludes, that the Buckingham Township Solicitor may represent the two township supervisors in the removal proceeding.*

In its zeal to afford the two supervisors the services of the township solicitor, appointed by the supervisors at public expense, the majority has overlooked the consequences of its conclusion. In the event that it is determined that either one or both of the supervisors are guilty of refusing and/or neglecting to perform their duties, one or both supervisors are subject to removal from office. See Second Class Township Code, § 503. Despite their removal for official misconduct, under the majority's view the supervisors would receive the services of the township solicitor free of charge.

There is no principle of public service or public policy which grants to public officials adjudged to have acted improperly in office and subject to removal the exceptional privilege of having the township's solicitor defend their misconduct in office. As our Superior Court long ago observed,

"to permit such use of public funds is but to encourage a disregard of duty and to put a premium upon neglect or

* Even if the majority were correct in concluding that the present action does call into question the township's interests for purposes of section 582 of the Code, a conclusion I do not share, the majority fails to justify the township solicitor's conduct in choosing to represent two supervisors who are subject to the removal proceeding, rather than either the third supervisor, who has joined with the complaining residents of Buckingham Township, or the residents themselves. Where, as here, two township supervisors are the subject of a removal proceeding, the solicitor's representation of one or both of such individuals is manifestly inappropriate. By condoning the township solicitor's selective representation, the majority makes its faulty analysis of section 582 all the more apparent. One wonders whether the majority would reach the same result if only one supervisor were the subject of removal.

refusal of public officials to perform the duties imposed upon them by law."

*Roofner's Appeal,* 81 Pa.Super. 482, 485 (1923).

On this record, the trial court's interlocutory order directing the township solicitor's disqualification is manifestly proper. The majority's determination to the contrary is both premature and incorrect. I dissent and would not disturb the interlocutory order of disqualification.