## Gsell v. Diehl

*Donald L. Kornfield,* for plaintiffs.
*Thomas J. Finucane,* for defendants.

KELLER, *J.,* January 3, 1986—Plaintiffs filed an action to quiet title on July 11, 1985. On July 31, 1985, defendant Diehl filed a preliminary objection in the nature of a demurrer; defendant Thomas also filed a preliminary objection in the nature of a demurrer to counts II and IV and a motion for a more specific complaint. Plaintiffs filed a petition for special relief pursuant to Pa.R.C.P. 1532 and a rule to show cause was issued on July 22, 1985. An answer to the petition was filed August 2, 1985. Upon stipulation and agreement of counsel the petition for special relief was withdrawn on December 27, 1985. Plaintiffs filed a petition for injunctive relief and a rule issued on August 29, 1985. An answer was filed on September 9, 1985. Briefs were submitted and arguments on the injunction were heard at the November argument court. The issue of injunctive relief is ripe for disposition.

The issue is whether attorney Thomas J. Finucane should be enjoined from representing Ha-

zel M. Gsell Diehl because plaintiffs allege that defendant Thomas exerted undue influence on defendant Diehl resulting in the execution of a deed conveying real estate from Mrs. Diehl to Mrs. Thomas. The trial court in the first instance has the power to regulate the conduct of the attorneys practicing before it and has the duty to insure that those attorneys act in accordance with the Code of Professional Responsibility. *American Dredging v. City of Philadelphia*, 480 Pa. 177, 389 A.2d 568 (1978). The Pennsylvania Code of Professional Responsibility, Canon 5, requires a lawyer to exercise independent professional judgment on behalf of a client:

"In those instances in which a lawyer is justified in representing two or more clients having differing interests, it is nevertheless essential that each client be given the opportunity to evaluate his need for representation free of any potential conflict and to obtain other counsel if he so desires. Thus before a lawyer may represent multiple clients, he should explain fully to each client the implications of the common representation and should accept or continue employment only if the clients consent . . . ." Pa.C.P.R. EC 5-16, 42 P.S.

The corresponding disciplinary rule provides:

"DR 5-105. Refusing to Accept or Continue Employment if the Interests of Another Client May Impair the Independent Professional Judgment of the Lawyer. -

"(A) A lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, or if it would be likely to involve him in representing differing interests, except to the extent permitted under DR 5-105(c).

"(C) In the situations covered by DR 5-105(A) and (B), a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each.

"Whether a lawyer can fairly and adequately protect the interests of multiple clients . . . depends upon an analysis of each case. . . ." Pa.C.P.R. E.C. 5-17. "When dealing with ethical principles . . . we cannot paint with broad strokes." *Silver v. Downs,* 493 Pa. 50, 425 A.2d 359 (1981) quoting *Funds of Funds, Ltd. v. Arthur Anderson & Co.,* 567 F.2d 225 (2nd Cir. 1977).

With these principles in mind, we turn to the question of whether attorney Thomas J. Finucane should be disqualified from representing both defendants. In *Peacock v. Danzis,* 12 D.&C.3d 655 (1978), plaintiff filed a petition requesting that a certain law firm be disqualified from representing the five defendant physicians on the ground of conflict of interest. Defendant's answer denied any conflict of interest and annexed affidavits from each defendant stating that each was aware of plaintiff's claim, the defendant's positions relative to one another, that all defendants were being represented by the same firm and that each wished to be represented by that firm. The court held that the affidavits satisfied the disclosure requirements of DR 5-105(C).

In the present case, defendants' answer states:

". . . both parties separately and out of the presence of the other have requested Thomas J. Finucane to represent them and they are both aware of the implications of common representation."

In accordance with Pa.R.C.P. 209(b), all the averments of facts responsive to the petition and properly pleaded in the answer are deemed admitted for the purposes of the injunctive proceeding. Thus, it appears that the attorney explained the implications of common representation to both his clients as required by the code. Similar to the *Peacock* defendants, it is the position of defendants in this case that their interests are alike:

". . . it is denied that the interest of Mrs. Diehl and Mrs. Thomas conflict in this litigation. They both are in favor of the validity of the deed from Mrs. Diehl to Mrs. Thomas and they both support plaintiffs having no standing as to count IV. . . ."

Analogous to the affidavits in *Peacock*, the facts pleaded in defendants' answer, which must be deemed admitted for the purpose of this determination, satisfy the disclosure requirements of Pa.C.P.R. DR 5-105(C).

"If a lawyer is requested to undertake or continue representation of multiple clients having potentially differing interests, he must weigh carefully the possibility that his judgment may be impaired or his loyalty divided if he accepts or continues employment." Pa.C.P.R. E.C. 5-15.

In the present case, it appears that the attorney has complied with this standard.

The paramount consideration in this case is the right of both defendants to have their attorney act in their respective best interests and to exercise independent professional judgment on their behalf.

"We cannot accept the premise, however, that the mere possibility that one of the ethical canons may be transgressed at some indeterminate point in liti-

gation is sufficient to trigger, without discovery or an evidentiary hearing, the extreme remedy of disqualification." *Silver v. Downs*, 493 Pa. 50 at 60, 425 A.2d 359 at 364 (1981).

In the case at bar, plaintiffs allege that in this action to quiet title the interests of defendants are potentially conflicting because they allege that Mrs. Thomas exerted undue influence on Mrs. Diehl thereby causing her to convey property to Mrs. Thomas which she had previously conveyed to plaintiffs. The allegations of undue influence are the subject of defendants' pending preliminary objections in the nature of a demurrer and a motion for a more specific complaint. Whether undue influence was exerted is at this stage of the litigation an open question. Although we are concerned about potential conflicts and need not wait for it to ripen into a certainty, *Pirillo v. Takiff*, 462 Pa. 511, 341 A.2d 896 (1975), we have no way of properly evaluating the seriousness of the potential for conflict here. It may be remote or nonexistent.

Although disqualification and removal is appropriate in cases in which representation of conflicting interests is shown, it is, of course, a serious remedy which must be imposed with an awareness of the important interests of a client in representation by counsel of the client's choice. *Slater v. Rimor Inc.*, 462 Pa. 138, 338 A.2d 584 (1975). In the case sub judice, each defendant has expressed her desire to be represented by the same counsel. This desire should be given considerable weight. We also recognize the hardship which easy disqualification may cause to Mrs. Diehl. Taking into consideration all of these factors, we decline to enjoin attorney Thomas J. Finucane from representing Hazel M. Gsell Diehl.

## ORDER

Now, this January 30, 1986, plaintiffs' petition for injunctive relief is denied.

Exceptions are granted plaintiffs.