**Green v. Blouch Estate**

*Howard B. Krug,* for plaintiff.
*Peter J. Speaker,* for defendant.

DOWLING, *J.*, August 19, 1991—Plaintiff, Suzanne Green, was injured in a motor vehicle accident on December 3, 1985, allegedly through the negligence of the decedent, Boyd Blouch. After the death of Mr. Blouch in 1986 in an unrelated accident, the relatives of Boyd Blouch failed to open an estate. Therefore, on October 29, 1987, Ms. Green was granted letters of administration in her capacity as a creditor of the decedent,[1] due to her claim against it for her injuries arising out of the December 1985 accident.

In taking out the estate letters, Ms. Green was represented by Howard Krug, Esq. She also employed his services in commencing both the instant action, against the estate of Boyd Blouch for her own injuries, and an action against the other driver for the fatal accident of 1986. In his capacity as Ms. Green's attorney for the latter purpose, Mr. Krug wrote to the East Hempfield Township Police and secured the police accident report. He also conducted other legal business with regard to prosecuting this case on Ms. Green's behalf, including contacting the other driver and his insurance carrier. The matter was settled in May 1988 for $20,000.

In October 1988, administration of the decedent's estate was taken over by two children of Boyd Blouch, who are now the named defendants in the instant action. As the action against the estate on behalf of Suzanne Green proceeded, Mr. Krug continued to represent her, with Peter Speaker, Esq. now representing the estate. No challenge was raised to the representation of plaintiff by Mr. Krug until June 28, 1991, when defendants filed the instant petition to disqualify counsel, aimed at barring Mr. Krug from any further representation of the Greens.

---

1.  20 Pa.C.S. §711.

Defendants allege three reasons why Mr. Krug should not be allowed to represent the Greens: (1) the Blouch estate, formerly represented by Mr. Krug, has not consented; (2) the estate will be harmed by the use of information acquired by Mr. Krug during his former representation of the estate; and (3) by taking a fee from the estate for the successful prosecution of the action against the other driver, and then taking a fee from Ms. Green in the current case, Mr. Krug will end up obtaining the lion's share of the $20,000 obtained by the estate in settlement of the earlier action.

Before we address the merits of these points, we must point out that few aspects of trial practice are more likely to arouse concern than the assertion by one side, just before trial, of an objection to a basic point about the proceedings—subject matter jurisdiction, competency to sue, or, as in this case, the qualification of opposing counsel to proceed—which should have been raised earlier. It is at such times that one wishes that more people would heed the advice of Macbeth, who expressed towering scorn for his own (and, by implication, all comparable) inaction and delay:

*If it were done, when 'tis done.*
*Then twere well it were done quickly.* [2]

In the instant matter, the plaintiffs' ability to proceed at all with the case will be materially impaired if they have to find new counsel at this late date.

As the tone of the above passage indicates, we have decided to reject the argument of defendant in this case. There is nothing before us indicating that Mr. Krug obtained any "evidence," in his capacity

---

2. *Macbeth,* Act I, Scene 7.

as attorney for the Blouch estate, other than the police report on the 1986 accident that killed Mr. Blouch; and, since this is something which could have been acquired by any attorney for the current plaintiffs, through the use of a subpoena duces tecum, there is no evidence of prejudice such as would lead to a conflict of interest. To say, as defendant does, that, "representation of the Blouch estate's personal injury claim necessarily involved inquiry into the decedent's background, his death, his eyesight, his medical history, and his employment history. . . [S]uch an investigation would involve subject matter that might become relevant in the case against the estate," is to miss the point. The relevant issue is not whether anything *at all* was learned by counsel during the earlier action which might be useful in the later one, but whether anything was learned *as a consequence of his confidential relation* with the estate which could be so used.

This is particularly true when one remembers that each of the proceedings with which we are concerned in this case—the suit against the Blouch estate, the opening of the Blouch estate, and the action by the Blouch estate against the other driver— are each separate and distinct from one another. The action by the instant plaintiffs against the Blouch estate is identical to the action that would have been brought against Mr. Blouch himself if he were still alive; the action against the other driver in the 1986 accident would presumably have been brought by Mr. Blouch himself, had he lived; and the estate would have to have been established and administered by the same people as it was, even if Mr. Blouch had died of cancer or heart trouble in 1986, rather than as a result of his accident-related injuries. Unless one were prepared to assert that all accidents, no matter how distant from one another

in time and space, represent parts of the same transaction as long as there is one party in common to each of them—an idea for which we know of no authority—we must consider the events in the case at bar to be separate and distinct pieces of litigation.

This is a relevant observation in light of the findings in a case cited by the defendants, *Ettinger v. Cranberry Hill Corp.*, 665 F.Supp. 368 (M.D. Pa. 1986). The court in that instance laid down the two tests for disqualification of counsel:

"Two standards of review are utilized to determine whether a motion to disqualify is meritorious. If the representation is against an existing client, a prima facie standard is approximate; if the representation is against a former client, then the 'substantial relationship' test is employed. Under the prima facie standard, the propriety of the conduct is 'measured not so much against the similarities in litigation, as against the duty of undivided loyalty which an attorney owes to each of his clients.' Under the substantial relationship test, an examination is required of the similarities in the subject matter of each representation." *Id.* at 370. (citations omitted)

There has been no simultaneity of representation in the case at bar for the past three years, since the transfer of the estate into the current defendants' hands in October 1988. It is, therefore, our belief that it is the "substantial relationship" test that should be applied in the instant case. This is all the more appropriate since the common role of Mr. Krug in the two cases, such as it was, would still have tended overwhelmingly to promote the interests of defendant in the earlier case, rather than to counter them. Even if one were to assume that Mr. Krug's primary motive in seeking recovery from the driver who struck Mr. Blouch was to "fatten the goose" of the estate, so as to make it more of a tasty

morsel for a later recovery from it by Ms. Green, this would still have tended to strengthen the zeal with which he prosecuted the action for the estate, rather than the reverse. If the instant case against the estate should happen to be resolved in the estate's favor, the estate will have had the full benefit of Mr. Krug's legal skill, with no tangible detriment to itself. We cannot allow a decision on the matter currently before us to be influenced by a hypothetical consideration of how the instant case may, or may not, be decided.

Nor are we persuaded by the defendant's citation to *American Dredging Co. v. City of Philadelphia,* 480 Pa. 177, 389 A.2d 568 (1978), for the proposition that the defendant's delay in raising this motion to disqualify is, or should be, an irrelevant consideration. The motion for disqualification in *American Dredging* arose out of the fact that a member of the law firm to which the plaintiffs' counsel belonged sat, at that time, on the board and executive committee of an agency of the defendant. This ongoing situation could indeed not be barred from judicial review by any laches on the defendant's part in making the motion to disqualify, since it was too egregious a factor to be allowed to pass. In the case currently before us, the duality of roles played by plaintiff's counsel has been over for three years; and there is no reason as to why the delay in raising the challenge to Mr. Krug's representation came to pass, unless as a matter of procedural tactics on defendant's part, which will not pass muster.

In light of the above determinations, we do not believe that the Blouch estate's refusal to agree to Mr. Krug's representation of Ms. Green is pertinent. Where there is no conflict of interest, there is no right by one side to object to counsel for the other.

Finally, we must discount the insupportable proposition that there is something improper about the counsel for plaintiffs being paid for his work in both cases, on the grounds that this will lead him to acquire too large a share of the settlement. First, as we have pointed out above, there is no inherent reason to believe that plaintiff will win the instant case; should she lose, her attorney will have to be paid out of her pocket (if at all), not defendant's. More to the point, however, the proposition that only a certain percentage of a personal injury settlement—or an inheritance, or a lottery windfall—can be spent on attorney's fees in unrelated cases is a spurious, if rather intriguing, assertion; and not knowing of any authority for it (even in the realm of history or literature), we must decline to be guided by it, at least until such time as a further analysis of the Codes of Justinian, Hammurabi, or Confucius yields up a hook on which to hang this particular esoteric hat.

Accordingly, we enter the following

### ORDER

And now, August 9, 1991, defendant's petition to disqualify counsel is hereby dismissed.